PEEK, RESPONDENT, *v.* NORTHERN PACIFIC RY. CO. ET AL., APPELLANTS.

(No. 3,417.)

(Submitted September 23, 1915. Decided October 18, 1915.)

[152 Pac. 421.]

*Railroads — Employees' Beneficial Associations — Conspiracy — Physicians and Surgeons — Injury to Business — Failure of Proof.*

Railroads—Beneficial Associations—Conspiracy—Physicians and Surgeons— Injury to Business.

1. A railway employees' beneficial association, organized to furnish medical and surgical aid to its members, retained physicians at various points on the line, and its rules required members needing medical or surgical aid at the association's expense to call the nearest authorized physician, except that in emergencies other services for first attention might be procured. Its president wrote the general superintendent of the railway, calling attention to the expense caused by the disposition of certain employees to call on plaintiff, who was not one of the association's physicians, and such superintendent wrote to division superintendents stating the ·president's grievance, to the end that the practice mentioned might not be resorted to except in emergency cases. One of the division superintendents issued a circular quoting the association's rules and expressing the hope that it would not be necessary to again call attention to the embarrassment to the railway company and the association through failure to comply with the instructions. He also verbally told a yardmaster that it was his desire to have the company physician called in all cases in preference to plaintiff or any other doctor. By the yardmaster's direction

a notice was posted in effect directing all yard employees not to call plaintiff under any circumstances, but, if the authorized doctor could not be located, to have the injured party sent to the hospital. *Held,* that the yardmaster and the railway company were liable for the injury caused plaintiff by the publication of the notice not to employ him under any circumstances; the former because his act was wrongful and in excess of his orders, the latter under the maxim of *respondeat superior.*

Same—Directing Employees not to Employ Physician—Damages—Failure of Proof.

2. Plaintiff physician having based his injury upon the loss of such emergency practice chargeable to the beneficial association as would have come to him but for the notice complained of *supra,* there was a failure of proof where his evidence failed to disclose what portion of the loss occasioned came within the class of emergency cases for which liability was claimed, and he was therefore entitled to nominal damages only.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

ACTION by William A. Peek against the Northern Pacific Railway Company, M. M. Fowler, Fred Kennedy and others. From a judgment for plaintiff, the defendants named appeal. Remanded, with directions.

*Messrs. Gunn, Rasch & Hall,* for Appellants, submitted a brief, as well as one in reply to that of Respondent; *Mr. Carl Rasch* argued the cause orally.

The plaintiff failed to make a case entitling him to any recovery. (See *Banks* v. *Eastern Ry. & Lumber Co.,* 46 Wash. 610, 11 L. R. A. (n. s.) 485, 90 Pac. 1048; *Union Labor Hospital Assn.* v. *Vance Redwood Lumber Co.,* 158 Cal. 551, 33 L. R. A. (n. s.) 1034, 112 Pac. 886; *Orr* v. *Home Mut. Ins. Co.,* 12 La. Ann. 255, 68 Am. Dec. 770; *Robison* v. *Texas Pine Land Assn.* (Tex. Civ. App.), 40 S. W. 843; *Guethler* v. *Altman,* 26 Ind. App. 587, 84 Am. St. Rep. 313, 60 N. E. 355; *Master Builders' Assn.* v. *Domascio,* 16 Colo. App. 25, 63 Pac. 782; *Brewster* v. *Miller,* 101 Ky. 368, 38 L. R. A. 505, 41 S. W. 301; *Baker* v. *Metropolitan Life Ins. Co.,* 23 Ky. Law Rep. 1174, 55 L. R. A. 271, 64 S. W. 913; *Boyson* v. *Thorn,* 98 Cal. 578, 21 L. R. A. 233, 33 Pac. 492; *Payne* v. *Western etc. R. Co.,* 13 Lea (Tenn.), 507, 49 Am. Rep. 666; *Heywood* v. *Tillson,* 75 Me. 225, 46 Am. Rep. 373; *Bohn*

*Mfg. Co.* v. *Hollis,* 54 Minn. 223, 40 Am. St. Rep. 319, 21 L. R. A. 337, 55 N. W. 1119; *Macauley* v. *Tierney,* 19 R. I. 255, 61 Am. St. Rep. 770, 37 L. R. A. 455, 33 Atl. 1; *Lindsay & Co., Ltd.,* v. *Montana Federation of Labor,* 37 Mont. 264, 127 Am. St. Rep. 722, 18 L. R. A. (n. s.) 707, 96 Pac. 127; *Parkinson Co.* v. *Building Trades Council,* 154 Cal. 581, 16 Ann. Cas. 1165, 21 L. R. A. (n. s.) 550, 98 Pac. 1027.)

*Mr. Wellington D. Rankin,* for Respondent, submitted a brief; *Mr. Beverly S. Dudley,* of Counsel, argued the case orally.

The complainant states a good cause of action. (*Graham* v. *St. Charles St. Ry. Co.,* 47 La. Ann. 214, 49 Am. St. Rep. 366, 27 L. R. A. 416, 16 South. 806; *Delx* v. *Winfree,* 80 Tex. 400, 26 Am. St. Rep. 755, 16 S. W. 111; *Ertz* v. *Produce Exchange of Minneapolis,* 79 Minn. 140, 79 Am. St. Rep. 433, 48 L. R. A. 90, 81 N. W. 737; *International & G. N. Ry. Co.* v. *Greenwood,* 2 Tex. Civ. App. 76, 21 S. W. 559; *Olive* v. *Van Patten,* 7 Tex. Civ. App. 630, 25 S. W. 428; 8 Cyc. 654; *Quinn* v. *Leatham,* 70 L. J. P. C. (n. s.) 76; *Old Dominion S. S. Co.* v. *McKenna,* 30 Fed. 48.)

The general rule of law is, that wherever one injures a man's business, profession or occupation, he is liable for the damages he inflicts, and the exception to this rule is that, where the injury is caused by competition in trade or the lawful exercise of a right, then the injury is justifiable. But where such injury is inflicted, the presumption always is that the rule and not the exception applies, and the inflictor of the damage must show that he falls within the exception. (*Keeble* v. *Heckeringill,* 11 East, 574, 103 Eng. Reprint, 1127; *Carrington* v. *Taylor,* 11 East, 571, 103 Eng. Reprint, 1126; *Mogul S. S. Co.* v. *McGregor,* L. R. 21 Q. B. Div. 544.) As establishing the law that an act done for the purpose of damaging the business of another creates a liability, unless justified, and that maliciousness may make an act otherwise lawful to be unlawful, see, also, *Barr* v. *Essex Traders' Council,* 53 N. J. Eq. 101, 30 Atl. 881; *Hopkins* v. *Oxley Stove Co.,* 83 Fed. 912, 28 C. C. A. 99; *Ertz* v. *Produce Exchange,*

79 Minn. 140, 79 Am. St. Rep. 433, 48 L. R. A. 90, 81 N. W.
737; *Plant* v. *Wood,* 176 Mass. 492, 79 Am. St. Rep. 330, 51
L. R. A. 339, 57 N. E. 1011; *Doremus* v. *Hennessy,* 176 Ill. 608,
68 Am. St. Rep. 203, 43 L. R. A. 797, 52 N. E. 924, 54 N. E. 524;
*Mason* v. *Mansfield,* 4 Cranch C. C. 580, Fed. Cas. No. 9243;
*Temperton* v. *Russell,* 1 Q. B. (1893) 715; *Chiatovitch* v. *Han-
chett,* 88 Fed. 873; *Boutwell* v. *Marr,* 71 Vt. 1, 76 Am. St. Rep.
746, 43 L. R. A. 803, 42 Atl. 607.

The trend of modern decision is away from the principles laid
down in the older cases of *Payne* v. *Western & A. R. Co.* and
*Heywood* v. *Tillson,* cited by appellants. (See *Dunshee* v.
*Standard Oil Co.,* 152 Iowa, 618, 36 L. R. A. (n. s.) 263, 132
N. W. 371.)

MR. JUSTICE SANNER delivered the opinion of the court.

The amended complaint in this action alleges: That the de-
fendants Northern Pacific Railway Company, a corporation,
C. L. Nichols, its general superintendent, M. M. Fowler, its divi-
sion superintendent, F. E. Kennedy, its yardmaster at Helena,
and J. M. Welsh, its assistant yardmaster, conspiring to injure
plaintiff in his profession as a physician, did publish and bring
to the notice of the employees of said company the following:

"Helena, Mont., Mar. 3, 1911.
"All Yard Employees:

"In case of accident to an employee where medical attention
is needed at once, do not in any case call Dr. Peek. If company
doctor cannot be located, order ambulance and have party sent
to hospital.

"[Signed]    F. E. KENNEDY,
"General Yardmaster."

That said notice was maliciously intended to and did injure
the plaintiff in his business. That by it many of the employees
of the defendant company who would otherwise have dealt with
the plaintiff were prevented from doing so, in consequence of
which he lost business to his damage.

Issue being joined, the cause was tried to a jury, evidence on the part of plaintiff only being received. According to the [1] evidence, the Northern Pacific Beneficial Association is an organization of employees of the defendant railway company for the purpose of furnishing medical and surgical aid to its members, under certain rules and regulations. To this end it operates hospitals and retains physicians or surgeons at various points along the line of the Northern Pacific Railway, two of such, *viz.,* Drs. Treacy and Cooney, being located at Helena. The rules and regulations of the association provide that, when its members require medical or surgical aid at the expense of the association, the nearest authorized physician or surgeon must always be called, save that in sudden emergencies arising from accident in the discharge of duty, other services for first attention may be procured pending the arrival of the authorized surgeon. Membership in the association and assent to its rules and regulations by all officials and regular employees of the railway company—except those on temporary duty, those whose monthly compensation is less than $25, and those afflicted with chronic disease before entering the service—is made a condition of employment with that company. The funds to carry out the purposes of the association are obtained from fixed dues imposed upon its members in proportion to the monthly wage or salary received; and, if these are inadequate, the deficit is made up by donation from the railway company. The association, however, has a separate entity from the railway company, possesses its own board of managers, and conducts its own business through an executive committee of which its president is the head. On January 17, 1911, M. C. Kimberly, its then president, wrote to defendant Nichols, as general superintendent, directing attention to the fact that much annoyance and some expense had been caused to the association on account of a disposition on the part of certain employees at Helena to call upon Dr. Peek for medical and surgical service without any proper effort being made to secure one of the association's authorized surgeons, and "without much regard for N. P. B. A. rules." In illustration of the

conditions it was pointed out that Dr. Peek had recently presented a bill for $1,600 for services rendered, including an operation which it was believed had been unnecessary, and the hope was expressed that Mr. Nichols would do what he could to improve the situation. In conformity with this, Mr. Nichols on January 20, 1911, wrote to the division superintendents within his jurisdiction, including the defendant Fowler, stating Mr. Kimberly's grievance, ''in order that the practice [of calling outside physicians] may be carefully watched and not resorted to except in emergency cases,'' and directing that the matter be taken up with that object in view. Ten days later Mr. Fowler issued the following circular:

''Northern Pacific Railway Company. Office of Division Superintendent.

''Missoula, January 30, 1911.

''Notice.

''All Concerned:

''On page 8 of current time-table the following instructions with reference to the calling of surgeons and physicians appears: 'Railway officials are required to call on the nearest authorized surgeons whenever practicable, when surgical or medical services are needed. Where such are accessible, the association will not be responsible for bills or medical services rendered by any other physician. In the event of a sudden emergency, arising from accident, if necessary proper surgical aid should be procured until the arrival of a regularly appointed surgeon, when the case should be placed in his charge, and in no case should the services of any other but an authorized company surgeon be continued at the expense of the railway company or the association after such surgeon is able to assume charge of the case.' In view of the prominence of the above instructions, it would hardly seem necessary that special attention should be called to them; yet the company has recently been presented with bills aggregating $1,600 to cover a case of an injured employee where an outside physician was called, and it is believed

unnecessarily; the employees handling the case neglecting to see that an authorized surgeon was subsequently placed in charge of the case with as little delay as possible, in accordance with the above instructions. I hope, therefore, it will not be necessary to again call the attention of anyone to the fact that the railway company and the N. P. B. A. have been embarrassed through neglect in proper compliance with instructions; certainly there is no reasonably good excuse in view of the prominence of the plain instructions to govern.

"M. H. FOWLER,

"Superintendent."

Some time later, but before the posting of the notice complained of, Mr. Fowler spoke to the defendant Kennedy on the same subject, the occasion being an accident to an employee for whose care Dr. Peek had been called, instead of the association physician, and in that conversation Mr. Fowler again referred to the rules, and said that it was his desire to have the company physician called in all cases, in preference to Dr. Peek or any other doctor. Thereafter the defendant Welsh, at the direction of Mr. Kennedy, posted the notice complained of on the wall of one of the rooms of the company's yard office at Helena. Nichols, Kennedy and Welsh, who were called as plaintiff's witnesses, disclaimed any malice or ill will toward the plaintiff or any desire to injure him in his business.

On the subject of damages the only evidence was the testimony of Burt Ward and the plaintiff, Dr. Peek. Ward testified that after the notice in question was posted, and while he was in the employ of the railway company as extra switchman he fell off a flat car and hit his head on the ground, but did not call Dr. Peek, on account of the notice, did get Dr. Cooney on the phone, went to Dr. Cooney's office, saw him, and immediately returned to work. Dr. Peek testified: "Q. Prior to March 3, 1911, what have you to say as to the extent of your medical practice with yard employees of the Northern Pacific in comparison with the practice you had with the yard employees of the Northern Pacific Railway Company after March 3d?

A. There has been a visible loss of about $70 per month; would average about $70; and the invisible amount I could not say. Q. And that extends up to the present time? A. It extends to the present time. Well, I should judge it is about the same, what I am doing now as compared with the business prior to that. Q. And that is with the yard employees? A. Yes, sir.''

At the close of the evidence defendants moved for a nonsuit, which was denied. They elected to offer no evidence, but moved for a directed verdict, which was also refused. Whereupon the court submitted the case to the jury, giving them, at plaintiff's request, the following instructions, among others:

''You are instructed that, if you further find from the evidence that the notice set out in plaintiff's complaint was posted by defendant J. M. Welsh in obedience to the commands of his superior, Fred Kennedy, and that said Kennedy, in commanding said J. M. Welsh to post said notice, was acting within the scope of his employment with the defendant Northern Pacific Railway Company, and that, as a direct result of said posting of said notice, plaintiff sustained damages to his practice as a physician and surgeon by reason of yard employees failing to call the plaintiff in cases of accident to themselves, received while engaged in their work as yard employees, where medical attention was needed at once, and it was impracticable to call an authorized physician, and plaintiff would have been called, then your verdict should be for the plaintiff and against such defendants as you find from the evidence took part in or sanctioned the posting of said notice.

''You are instructed that, if you find from the evidence and the instructions given you by the court that plaintiff is entitled to recover, then, in assessing his damages, you will award him such an amount as will fully compensate him for the loss of patronage, if any he sustained, of yard employees who had received injuries where medical attention was needed at once, and it was impracticable to call an authorized physician, and plaintiff would have been called, but for the posting of the notice

referred to in plaintiff's complaint from the date of the posting of said notice until the present time.''

The jury returned a verdict exonerating Nichols and Welsh, but finding for the plaintiff and against the other defendants in the sum of $700. Judgment on the verdict was entered, and a motion for new trial was denied. Hence these appeals.

From the instructions just quoted it is clear that the plaintiff prosecuted his case upon the theory—which was entirely correct—that his right of action was not for the loss of general practice among employees of the defendant company, but for loss of such emergency practice chargeable to the beneficial association as would have come to him but for the notice complained of; in other words, that the defendants had and could have no authority to say that the beneficial association would not deal with Dr. Peek in any case. That the beneficial association could, under proper circumstances, have lawfully signified to its members by any proper means its indisposition to have any dealings whatever with Dr. Peek, is, we think, beyond dispute (*Lindsay & Co., Ltd.,* v. *Montana F. & L.,* 37 Mont. 264, 127 Am. St. Rep. 722, 18 L. R. A. (n. s.) 709, 96 Pac. 127) ; but that it did not do or authorize anything of the kind is equally clear from the evidence of record. The letter of Mr. Kimberly was ample warrant for defendants to proceed according to its purport, but it did not go beyond the request for suitable steps to enforce the rule of the association restricting the call of outside surgeons to cases of emergency and pending the arrival of the authorized surgeon. From this the notice in question was a material departure, and the question is: Whose is the liability and to what extent is that liability established?

The exoneration of Mr. Nichols by the jury was entirely just. His only participation in the matter was his letter to the division superintendents, and that letter was well within the range of Mr. Kimberly's request. For the same reasons the defendant Fowler should also have prevailed. Nothing written or said by him exceeded the scope of Mr. Nichols' letter or constituted any order to the defendant Kennedy to go beyond what the rules

of the association require. Mr. Kennedy, however, was liable, notwithstanding his alleged want of actual malice. The rules were called to his attention, and he was told that preference was due to the authorized surgeon in every case; but he was not directed to publish, as in effect he did, that under no circumstances should Dr. Peek be called. To that extent, and in that sense, his action was wrongful, and malice, if necessary, might be implied. The company was also liable, though upon other grounds. Mr. Kennedy was its yardmaster at Helena, and it was within the general scope of his employment to publish suitable notices to such of the company's employees as were under his direction, including, when authorized, such notices as the one complained of. Had the railway company directed the publication, unauthorized by the beneficial association as it was, its liability would be obvious. So in permitting its channels to become the medium through which the beneficial association should speak to its employees, it undertook to answer for wrongs committed in that process. (*Grorud* v. *Lossl,* 48 Mont. 274, 136 Pac. 1069.)

We cannot agree, however, that liability in any amount has been established against any of the defendants. Under his own [2] theory of the case plaintiff was entitled to enjoy only that practice chargeable to the beneficial association which, save for the notice, would have come to him in emergency cases. His testimony—unsatisfactory at best—touches only his entire activities among yard employees. No figures are given, no circumstances stated, upon which cross-examination might be based or a determination reached as to what portion of the whole loss came within the class for which liability was claimed. So far as damages are concerned, there is a total failure of proof, and the plaintiff must be relegated to his right to nominal damages only.

So far as the defendant Fowler is concerned, the judgment and order appealed from are reversed, and the cause is remanded to the district court, with directions to enter judgment in his favor. As regards the other appealing defendants, the order

appealed from is affirmed, but the cause is remanded to the district court, with directions to correct the judgment to award damages in the sum of $1. Each party to these appeals will pay his own costs of appeal.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

