INTERSTATE NATIONAL BANK, RESPONDENT, *v.* Mc-
CORMICK, APPELLANT.

(No. 5,117.)

(Submitted April 4, 1923.   Decided April 16, 1923.)

[214 Pac. 955.]

*Conversion—Deprivation of Property—Wrongful Issuance of
Injunction—Complaint—Sufficiency.*

Conversion—Injunction—Wrongful Issuance—Proper Remedy.
1.   Defendant purchased fifteen carloads of hay under contract.   He
accepted nine and refused to take six claiming that the quality of
the latter was not of the kind contracted for.   Immediately upon
shipment the seller had indorsed the bills of lading to a bank and
made drafts upon the buyer for the purchase price, the bank giving
him credit therefor.   Defendant commenced action against the seller
for damages for breach of contract and procured an injunction
against the removal of the six rejected cars or the disposition of the
hay contained therein.   The injunction bond ran to the seller only
and the bank had not been made a party to the action.   The in-
junction was set aside at the motion of defendant after a lapse of
eighteen days during which time the hay had greatly depreciated in
value.   *Held,* that the bank, the owner, not having been protected
by the bond, could not secure relief by an action on it, and that its
action in conversion was a proper remedy.

Same—What Constitutes.
2.   For a taking of personal property to constitute conversion, any
act of dominion over it in denial of the owner's right or incon-
sistent with it is sufficient, and therefore the wrongful procuring of
an injunction order depriving a party of his right to exercise con-
trol or dispose of his property and resulting in injury, amounts in
law to a conversion.

Same—Complaint—Sufficiency.
3.   Complaint alleging ownership of the property described, its value
and the acts of defendant which deprived plaintiff of it, was suffi-
cient, and an allegation that defendant in procuring the injunction
order referred to above, did so wrongfully, was unnecessary.

*Appeal from District Court, Yellowstone County; C. E.
Comer, Judge.*

ACTION by the Interstate National Bank against W. H. Mc-
Cormick.   Judgment for plaintiff, and defendant appeals.
Affirmed.

*Messrs. Grimstad & Brown,* for Appellant, submitted a brief; *Mr. O. K. Grimstad* argued the 'cause orally.

The general principle of law applicable to this case and to the facts as disclosed by the record is stated in 22 Cyc. 1061, and reads as follows: ''Where an injunction has been wrongfully issued there is no liability for damages in an action other than the injunction suit, except in an action on the injunction bond, unless the party against whom the injunction was issued can make out a case of malicious prosecution by showing malice and want of probable cause on the part of the party who obtained it.'' (*Mark* v. *Hyatt,* 135 N. Y. 306, 31 N. E. 1099; *Robinson* v. *Kellum,* 6 Cal. 399, 2 Am. St. Rep. 399; *Powell* v. *Woodbury et al.,* 85 Vt. 504, Ann. Cas. 1914D, 606, 83 Atl. 541; *Asevedo et al.* v. *Orr,* 100 Cal. 293, 34 Pac. 777; *Hawkins* v. *Hubbell & Houser et al.,* 127 Tenn. 312, 154 S. W. 1146; *Rieger & Co.* v. *Knight,* 128 Md. 189, L. R. A. 1916E, 1227, 97 Atl. 358; *Kryszke* v. *Kamin,* 163 Mich. 290, 128 N. W. 190; *Anderson* v. *Provident Life & Trust Co.,* 26 Wash. 192, 66 Pac. 415; *Vesper* v. *Crane Co.,* 165 Cal. 36, L. R. A. 1915A, 541, 130 Pac. 876; *Pyott Land & Mining Co.* v. *Tarwater,* 126 Tenn. 601, 150 S. W. 539.)

Respondent may attempt to substantiate the action by reason of the fact that it was not a party to the action in which the injunction was obtained. We submit, however, that, in principle, there can be no difference as to whether the respondent was a party to the action where the injunction was obtained or whether he was a third party whose property was being interfered with.

*Messrs. Pierson & Smith,* for Respondent, submitted a brief; *Mr. George W. Pierson* argued the cause orally.

Respondent was a stranger to the injunction proceedings. Under the statute, the injunction bond is executed for the benefit of the defendant. Appellant having caused an injunction order to be served on the railroad company restraining it from removing, transporting or in any manner disposing of

the hay, cannot now say he did not assert dominion over the property of the respondent. And as appellant caused it to be consumed, he is liable in damages as a transgressor. The complaint states a cause of action in conversion of which appellant does not complain, but merely says we should show conversion with malice. The property could not be subjected to the debt of the Gateway Hay Company. (*Owensboro Banking Co* v. *Buck*, 16 Ala. App. 346, 77 South. 940; *Pastene & Co.* v. *First Nat. Bank*, 19 Ariz. 493, 172 Pac. 656; *Plainsville Nat. Bank* v. *Hannan*, 64 Colo. 301, 171 Pac. 364.) Conversion was clearly established and the process of the court is no excuse, particularly as to strangers to the action. (*Tuttle* v. *Hardenberg*, 15 Mont. 219, 38 Pac. 1070; *McDonald* v. *Bayha*, 93 Minn. 139, 100 N. W. 679; *State* v. *Omaha Nat. Bank*, 59 Neb. 483, 81 N. W. 319.) Neither malice nor want of probable cause need be shown even where the plaintiff was made a party to the wrongful proceedings. (*Paul* v. *Fargo*, 84 App. Div. 9, 82 N. Y. Supp. 369.)

MR. JUSTICE STARK delivered the opinion of the court.

Plaintiff brought this action to recover damages alleged to have been sustained by reason of defendant's wrongful and unlawful interference with and conversion of certain hay which belonged to it. The facts of the case necessary for a determination of the question involved in this appeal are as follows:

On May 5, 1920, the defendant, W. H. McCormick, ordered from the Gateway Hay Company of Kansas City, Missouri, fifteen carloads of hay to be shipped to him at Billings, Montana, at the agreed price of $31 per ton for ten carloads, and $30 per ton for five carloads, all f. o. b. Billings. Pursuant to this order the hay company shipped the hay on different dates between the sixth day of May and the twentieth day of May, over the Chicago, Burlington & Quincy Railroad, consigned to itself at Billings, under bills of lading containing a provision to notify the defendant upon its arrival and allow inspection. The hay company immediately indorsed the several bills of lading to the

plaintiff and made drafts on defendant for the purchase price, less freight charges, payable to the plaintiff, and delivered the bills of lading and drafts to the plaintiff, which thereupon gave the hay company credit therefor.  The plaintiff indorsed the drafts in due course of business and forwarded them together with the bills of lading, to a bank at Billings for collection, with instructions to deliver the bills of lading to the defendant upon payment of the drafts.  In regular course the hay reached Billings, and defendant was notified of its arrival and also of the arrival of the drafts and bills of lading at the bank in Billings, and that plaintiff was the owner thereof and of the hay shipped.  The defendant inspected, accepted and paid for nine carloads of the hay upon arrival, but refused to accept or pay for the remaining six cars.  After the arrival of the last six cars of hay at Billings, and, after inspecting the same and finding they were the same as the nine cars which he had theretofore inspected, accepted and paid for, on June 5, 1920, the defendant herein filed his complaint in the district court of Yellowstone county against the hay company, setting forth his transactions with that company as above detailed, that he had received and paid for nine cars of the hay, but that it was not No. 1 hay as represented to him by said company and was not worth more than $15 per ton, and that, by reason of these and other facts stated in that complaint, he had been damaged in the sum of $2,000, for which amount he asked judgment against the hay company.

After the filing of this complaint, the plaintiff therein also filed an affidavit in the case, reciting the filing of the complaint and the issuance of summons thereon, and stated therein that the hay company was a foreign corporation with its principal office in the state of Missouri; that it had not complied with the laws of this state relative to foreign corporations, and had no agent or place of business in this state and no property herein except six cars of hay then on the tracks of the Northern Pacific Railway Company at Billings, which it was about to remove from the state and to dispose of, with intent to de-

fraud him and to prevent him from realizing on any judgment
he might recover in the action, and praying that the defendant,
its agents, and employees, and particularly the Northern Pa-
cific Railway Company, be enjoined from removing, disposing
of, or interfering with any of said hay.

Upon the filing of this affidavit, an injunction order was
issued, directed to the hay company, the Northern Pacific Rail-
way Company, the Chicago, Burlington & Quincy Railway
Company and F. B. Mitchell, joint freight agent of said rail-
way companies, restraining them and each of them from
removing  or in any manner disposing of the six cars of hay
until the further order of the court, which order was duly
served upon Mitchell and the two railway companies. The hay
company was not served with process and did not appear in
the action.

The plaintiff in this action, upon being advised of the
above-mentioned proceedings, promptly employed an attorney
at Billings, who, on June 8, 1920, notified the defendant herein
by letter that it was the owner of the drafts, bills of lading,
and the hay covered thereby, and demanded that defendant
either take up the drafts by payment, or release the injunction
so far as the six cars of hay were concerned so that the hay
might be disposed of.

Although the plaintiff herein was a stranger to the action
brought by McCormick, it filed a petition therein reciting its
ownership of the drafts and bills of lading and showing that
the demurrage charges against the six cars of hay were con-
stantly increasing, and that, unless the injunction order was
released, it would lose the entire value of the hay by the ac-
cumulating expenses, and sought to have the order discharged.
A hearing was had upon the petition, at which the defendant
with his counsel appeared and successfully resisted the plain-
tiff's attempt, but subsequently, on June 23, 1920, defendant
voluntarily obtained an order from the court dismissing the in-
junction, the reason therefor being explained by his attorney on
the trial of this action in these words: "The reason I volun-

tarily asked that the injunction order be set aside was to clear the records and for the further reason that there wasn't anything that we was tying up that was worth anything.''

Some time after the above disposition of the injunction proceedings, this suit was instituted by plaintiff. It was not questioned but that the plaintiff was the owner of the six cars of hay mentioned in the injunction proceedings.

There was a trial by jury. At the conclusion of all the [1] testimony, defendant moved for a directed verdict upon the grounds, amongst others, that the plaintiff had not shown that the defendant in this action instituted the injunction proceedings against the hay company with malice and without probable cause, and that the plaintiff's remedy, if any, was on the undertaking in the injunction suit. This motion was denied. The case was submitted to the jury, which returned a verdict in favor of the plaintiff for $795, upon which judgment was entered, from which defendant appealed. The defendant specifies as error the overruling of his motion for a directed verdict.

Defendant in his brief states his position on this appeal as follows: ''That, when an action is brought for wrongfully obtaining an injunction, the party is limited to two actions— one would be an action on the injunction bond. In that cause he could recover his actual damages without alleging malice and want of probable cause; the other would be in the nature of an action for malicious prosecution, and in an action of that kind it is necessary to allege and prove malice and want of probable cause.'' Numerous cases are cited to sustain this proposition. The general rule deducible from all of them is stated in 22 Cyc. 1061, as follows: ''Where an injunction has been wrongfully issued, there is no liability for damages in an action other than the injunction suit, except in an action on the injunction bond, unless the party against whom the injunction was issued can make out a case of malicious prosecution by showing malice and want of probable cause on the part of the party who obtained it.''

An examination of the cases cited discloses that, in each instance where the rule was applied, the plaintiff had been a defendant in the injunction proceeding and was thus in position to maintain an action upon the bond given in connection therewith. In that respect those cases differ materially from the one under consideration. Here the plaintiff was not a party to the suit in which the injunction order was issued. The undertaking given in that proceeding is set forth in the transcript. It is in statutory form, and the sureties .thereon—"promise to the effect that, in case said injunction issue, said plaintiff will pay to said defendant such damages, not exceeding the amount of this undertaking, as the defendant may sustain by reason of said injunction if the court finally decides that the plaintiff was not entitled thereto." The plaintiff herein was not named in the undertaking, the sureties thereon did not bind themselves to respond to it in damages for any amount or under any conditions. Their sole obligation was that the plaintiff therein, McCormick, would pay to the defendant named therein, Gateway Hay Company, such damages as it might sustain. Their undertaking did not inure to the benefit of the plaintiff, and it could not have maintained an action against them for its damages upon any possible theory. Having no right of action upon the undertaking in the injunction proceeding, plaintiff was obliged to seek other relief for the redress of its wrongs.

In *Tuttle* v. *Hardenberg*, 15 Mont. 219, 38 Pac. 1070, the [2] following language of Judge Cooley in his work on Torts (3d ed., p. 859) is quoted with approval: "Any distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion. 'The action of trover being founded upon a conjoint right of property and possession, any act of the defendant which negatives or is inconsistent with such rights amounts, in law, to a conversion. It is not necessary to a conversion that there should be a manual taking of the thing in question by the defendant; it is not necessary to be shown that he has applied it to his own

use. Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's right? If he does, that is, in law, a conversion, be it for his own or another person's use." " The same rule was affirmed by this court in *De Celles* v. *Casey,* 48 Mont. 568, 139 Pac. 586. (See, also, *State* v. *Omaha National Bank,* 59 Neb. 483, 81 N. W. 319, and *McDonald* v. *Bayha,* 93 Minn. 139, 100 N. W. 679.)

The act of the defendant in procuring the issuance and service of the injunction order which absolutely deprived plaintiff of the right to exercise control over or dispose of its property during a period of eighteen days, while the same constantly depreciated in value and until, according to the allegations of the complaint "said hay was totally lost to the plaintiff," amounted in law to a conversion of the same by him.

The plaintiff elected to bring its action against defendant **[3]** for the conversion of the hay, and in such action, in order to recover actual damages, it was only necessary to set forth in its complaint its ownership of the property, the value of the same, and the acts of the defendant which deprived it thereof. (*Reynolds* v. *Fitzpatrick,* 23 Mont. 52, 57 Pac. 452; *Harrington* v. *Stromberg-Mullins* Co., 29 Mont. 157, 74 Pac. 413; *Moore* v. *Crittenden,* 62 Mont. 309, 204 Pac. 1035.) The complaint herein meets the requirements of the rule adopted in the above cases and proof of such allegations would entitle plaintiff to recover his actual damages. It was not necessary to go further and allege that, in procuring the issuance and service of the injunction order, the defendant did any wrong whatever. (*Reynolds* v. *Fitzpatrick, supra.*)

From the foregoing it is apparent that, to entitle the plaintiff to recover the actual damages sustained by it on account of the issuance and levy of the injunction order in the case of *McCormick* v. *Gateway Hay Company,* it was not necessary for the plaintiff to allege and prove that McCormick was actuated by malice and without probable cause, and therefore the

court did not err in denying the defendant's motion for a directed verdict.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Cooper, Holloway and Galen concur.

Rehearing denied May 12, 1923.