SENSIBA, APPELLANT, *v.* OCCIDENT ELEVATOR CO.,
RESPONDENT.

(No. 6,186.)

(Submitted October 19, 1927. Decided November 4, 1927.)

[260 Pac. 709.]

*Conversion—What Constitutes—Corporation Liable for Action
of General Manager—Election of Plaintiff to Take Value
of Chattel—Interest.*

Conversion—What Constitutes.
　　1. Any distinct act of dominion wrongfully exerted over one's
property in denial of his right, or inconsistent with it, is a
conversion; to constitute a conversion it is not necessary that
there shall have been a manual taking of the thing in question
nor that the one taking it applied it to his own use; if the taker
exercises a dominion over it in defiance of plaintiff's right, be
it for his own or another person's use, he is guilty of conversion.

Same—Corporation Liable for Conversion by General Manager.
　　2. A corporation is liable for the conversion of property by its
general manager acting within the apparent scope of his authority.

Same—Plaintiff's Election to Take Value of Chattel—Entitled to Value
as of Date of Conversion, With Interest.
　　3. Where plaintiff in an action for conversion elects to take
the value of the property in money, he is entitled to its value
as of the date of the conversion fixed in the complaint if estab-
lished by the evidence, and to legal interest thereon from that
date, under section 8689, Revised Codes 1921.

Same—Of Grain by Elevator Company—Evidence—Sufficiency.
　　4. In an action for the conversion of a quantity of grain by
defendant elevator company, *held* that the evidence clearly showed
that defendant, through its manager, was advised that two-thirds
of the wheat delivered to it by plaintiff's tenant belonged to
plaintiff as the landlord's share of the crops raised by the former,
and that its refusal to pay therefor on demand constituted con-
version.

---

　　[1] Trover and Conversion, 38 **Cyc.**, p. 2005, n. 1, p. 2008, n. 5.
　　[2] Corporations, 14a **C. J.**, sec. 2843, p. 775, n. 58.
　　[3] Trover and Conversion, 38 **Cyc.**, p. 2090, n. 52, p. 2092, n. 56,
p. 2094, n. 61.
　　[4] Landlord and Tenant, 36 **C. J.**, sec. 1964, p. 716, n. 57. Trover
and Conversion, 38 **Cyc.**, p. 2086, n. 25.

　　1. See 26 **R. C. L.** 1110.
　　2. See 7 **R. C. L.** 687.
　　3. See 26 **R. C. L.** 1148 et seq.

*Appeal from District Court, Richland County; Frank P. Leiper, Judge.*

ACTION by L. E. Sensiba against the Occident Elevator Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded, with directions to enter judgment for plaintiff.

Cause submitted on briefs of counsel.

*Mr. C. A. Spaulding* and *Mr. C. E. Collett,* for Appellant.

*Mr. Paul Babcock,* for Respondent.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action in conversion instituted by the plaintiff to recover from the defendant, a North Dakota corporation, the sum of $761.60, the alleged value of 544 bushels of wheat. Upon issue joined by answer the cause was tried to a jury. Upon the completion of the evidence introduced by the plaintiff, both the plaintiff and the defendant rested, and each of them moved the court for a directed verdict. Thereupon by stipulation of counsel the jury was excused, and the case submitted to the court for decision. The defendant's motion was granted and judgment was accordingly duly entered dismissing the action and assessing the costs incurred to the plaintiff. The plaintiff has appealed from the judgment, and the only question presented for decision is whether the judgment is warranted by the evidence.

It appears that the plaintiff was the owner of a farm located in Richland county, which during the year 1923 was occupied and conducted by one Denton S. Pullen, under a verbal lease. Under the terms of the lease agreement, the plaintiff furnished the tenant with requisite seed wheat, machinery and other equipment, with which to farm the land, with the understanding that the grain grown thereon should be by the tenant

hauled, and divided one-third to the tenant and two-thirds to the landlord.

During the season of 1923, while the wheat crop upon the land was growing, the plaintiff visited the premises at least every two weeks. The only lands farmed that year by Mr. Pullen were those so leased by him, and therefrom there was threshed 817 bushels of wheat, and of that amount 807 or 808 bushels were by Pullen hauled to the defendant's elevator and there delivered. The first load was received at the elevator on September 10, 1923, at which time the plaintiff was present. Others present at that time were Robert Brockley, manager of the elevator, Henry Otto, an employee thereof, and Denton Pullen. Thereupon Mr. Pullen addressing the plaintiff in the presence of the persons named, said: "Where do you want your share of the grain hauled and stored?" To which the plaintiff replied: "Haul it here to the Occidental Elevator at Lambert," and then stated, "This wheat is raised on my place, and two-thirds of it is mine, and one-third is Mr. Pullen's." Mr. Brockley graded the wheat No. 1, and said it would all be similarly graded if the rest of it was as good as that first received, and the rest of the grain was "the same grade and quality." The plaintiff testified: "I went back to the elevator in about a week or ten days, at which time I had a conversation with Mr. Brockley concerning the wheat grown on my place." At that conversation Mr. Otto was present. "I recall that the conversation was concerning this wheat grown on my place and hauled in there by Mr. Pullen. I told him I wanted the scale weights and the figures, and he replied that he did not have time to get the figures. I went back to see Mr. Brockley concerning this wheat several times, repeatedly."

On December 22, 1923, the plaintiff addressed a letter to Mr. Brockley, which was received and read by the latter, wherein the plaintiff again demanded the scale weights and payment of the amount due him for his share of the wheat delivered at the elevator by Mr. Pullen. About a week later

the plaintiff again called at the elevator, and then had further
conversation with Mr. Brockley regarding the wheat grown on
plaintiff's farm and hauled to the elevator by Mr. Pullen:
"I asked Mr. Brockley how much wheat Mr. Denton Pullen
had drawn in off my farm, and I told him I wanted the figures,
and demanded payment. He said he had drawn in about 807
or 808 bushels. I told him the wheat was mine, and I de-
manded payment." Notwithstanding, the plaintiff never re-
ceived payment for his share of the wheat. He testified, with-
out objection, that the market value of wheat at Lambert on
December 29, 1923, was $1.40 per bushel. Henry Otto testi-
fied respecting the delivery of the wheat to the elevator by
Mr. Pullen, its grade, and corroborated the plaintiff respecting
the latter's visits to the elevator and conversations had with
Mr. Brockley, the manager. John Edam, who threshed the
wheat grown by Pullen on the plaintiff's farm, testified that
there was a total of about 817 bushels of wheat threshed by
him on that place in the fall of 1923. Timely demand in
writing was by the plaintiff made and served on the defendant
to produce at the trial "all warehouse receipts, storage tick-
ets and checks given by the defendant to one Denton S. Pullen
between the first day of September, 1923, and the thirty-first
day of December, 1923, both dates inclusive," and also "all
books of account, vouchers, letters, telegrams, writings, and
memoranda which in any way deals with or pertains to the
sale of wheat to the above-named defendant, by the said
Denton S. Pullen, between the first day of September,
1923, and the first day of July, 1924." So far as disclosed
by the record, this demand was by the defendant unheeded. It
was also shown that at the time of the trial the plaintiff was
the owner of his share of the grain and his claim therefor
against the elevator.

The law applicable is well settled and understood in this
[1] jurisdiction: "Any distinct act of dominion wrongfully
exerted over one's property in denial of his right, or incon-
sistent with it, is a conversion. 'The action of trover being

founded on a conjoint right of property and possession, any act of the defendant which negatives or is inconsistent with such right amounts, in law, to a conversion. It is not necessary to a conversion that there should be a manual taking of the thing in question by the defendant; it is not necessary that it should be shown that he has applied it to his own use. Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's right? If he does, that is in law a conversion, be it for his own or another person's use.' '' (Cooley on Torts, 3d ed., p. 859; *Tuttle* v. *Hardenberg,* 15 Mont. 219, 38 Pac. 1070; *De Celles* v. *Casey,* 48 Mont. 568, 139 Pac. 586; *Interstate Nat. Bank* v. *McCormick,* 67 Mont. 80, 34 A. L. R. 721, 214 Pac. 955.) And a corporation is liable for the con-

[2]  version of property by its general manager acting within the apparent scope of his authority. (*Schauer* v. *Morgan,* 67 Mont. 455, 216 Pac. 347.) The date of the conversion fixed

[3]  by the plaintiff's complaint and established by the evidence is December 29, 1923, and he is therefore legally entitled, as he has elected, to the value of the property at the time of its conversion, with interest thereon at the legal rate from that time. (Sec. 8689, Rev. Codes 1921.)

In our opinion, the evidence fully establishes the plaintiff's

[4]  case, and the court was in error in entering judgment for the defendant. The defendant was fully advised as to the plaintiff's right and claim to two-thirds of the wheat delivered by Mr. Pullen at the elevator, which information was imparted to it through its manager in charge of the elevator and the proof established clearly a case of conversion of the plaintiff's wheat. There was nothing for the court to do other than by a mathematical calculation to determine the amount of the wheat by the defendant converted and its reasonable market value at the time of the conversion, and ample proof was submitted to permit of such determination. The amount of the plaintiff's wheat converted by the defendant was at least two-thirds of 807 bushels, or 538 bushels, the fair market value

of which at the time and place of the conversion was $1.40 per bushel, or a total of $753.20.

Accordingly, the judgment is reversed and the cause remanded to the district court of Richland county, with directions to enter judgment in favor of the plaintiff for the sum of $753.20, together with interest at the legal rate from December 29, 1923, and costs incurred in the action.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.

Rehearing denied November 14, 1927.