MASER, Appellant, *v.* FARMERS' & MERCHANTS' BANK OF WINNETT, Respondent.

(No. 6,702.)

(Submitted April 15, 1931. Decided May 13, 1931.)

[300 Pac. 199.]

Cause submitted on brief of Appellant; Respondent making no appearance.

*Mr. Miles J. Cavanaugh* and *Mr. James H. Baldwin,* for Appellant.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action to recover damages for the conversion by defendant of a cashier's check in the sum of $600. The action

was tried to the court without a jury, resulting in a judgment in favor of defendant from which plaintiff has appealed.

The complaint sets forth that plaintiff, as the owner of certain land in Petroleum county, entered into a contract with W. M. Hostetler some time prior to October 23, 1926, whereby the latter was to drill for oil on plaintiff's land; that Hostetler was insolvent and had no tools with which to do the drilling, nor any means of acquiring them on his own account; that the Cat Creek Thermopolis Company agreed to lend tools to Hostetler upon furnishing security in the sum of $600 as a guaranty for their return; that, Hostetler being unable to furnish the security, plaintiff agreed to deposit $600 with the defendant bank as such security; that she drew her check in that amount, drawn upon W. A. Clark & Bros. Bank of Butte, payable to Hostetler, who delivered it to defendant; that there was no consideration given by Hostetler to plaintiff for the check; that defendant forwarded the check to W. A. Clark & Bros. for certification, but, instead of certifying the check, W. A. Clark & Bros. Bank issued a cashier's check for the sum of $600, payable to Hostetler, and forwarded it to defendant; that defendant had notice and knowledge that the $600 check was for the purpose of securing the return of the tools of the Cat Creek Thermopolis Company, and upon a return of the tools the plaintiff was entitled to the check; that pursuant to the agreement to hold the check as security for the return of the tools defendant held the check until on or about June 9, 1927, at which time the tools were returned to the Cat Creek Thermopolis Company; that plaintiff thereupon demanded that defendant return the check to her, and defendant refused to do so.

The answer is a general denial, coupled with an affirmative defense, the material parts of which state that on October 23, 1926, Hostetler, together with a representative of the Cat Creek Thermopolis Company, delivered the check referred to in the complaint to defendant to be deposited as security for the return of certain well-drilling tools borrowed by Hostetler from the Cat Creek Thermopolis Company; that the check was sent to W. A. Clark & Bros. Bank and a cashier's check

substituted in its place; that defendant at that time had no notice or knowledge of any claim of plaintiff on the moneys represented by the check, or any notice or knowledge that it did not belong to Hostetler; that defendant had no notice or knowledge until long thereafter that plaintiff had any claim to the check; that about the time the tools were returned to the Cat Creek Thermopolis Company, plaintiff's husband, as agent of plaintiff, advised defendant that plaintiff claimed the money as hers, and that defendant thereupon informed plaintiff's husband that the bank had received the check from Hostetler in good faith, and, in effect, that it would not become involved in the controversy between plaintiff and Hostetler as to the ownership thereof, and that it would be obliged to return the money to Hostetler from whom it was received; that, if plaintiff desired to protect herself, she would have to institute some proceedings prior to the return of the tools, and that she did not do so.

The reply admits that the check was deposited with defendant on October 23, 1926, as security for the return of the tools to the Cat Creek Thermopolis Company, and that, when the tools were about to be returned, the husband and agent of plaintiff advised defendant that plaintiff claimed the money as hers.

No useful purpose would be subserved in reviewing the evidence introduced at the trial. It is sufficient to say that the evidence offered by the plaintiff abundantly supports the allegations of the complaint above recited. It was not denied by that offered by defendant. In fact, but one witness, the cashier of the bank, was called by defendant, and he in effect substantiated the evidence offered by plaintiff relative to depositing and holding the check as security for the return of the tools to the Cat Creek Thermopolis Company. He testified that nothing was said when the bank was notified by an agent of the Cat Creek Thermopolis Company that the tools had been returned, as to whom the check was to be delivered. He said: "I then turned the check over to Mr. Hostetler, the man from whom we received it. I had some conversation with Michael Maser in the early part of June, 1927, with refer-

ence to this check in controversy. No action or proceeding was started against the bank to determine the controversy as to the title to the check prior to the time I delivered it to Mr. Hostetler.''

Mr. Maser, for the plaintiff, testified that he had notified the bank about June 3, and again on the 6th or 7th of June, that the check belonged to his wife and should not be returned to anyone else. This was done before the cashier's check was delivered by defendant to Hostetler and before the tools were returned. It was during the second conversation that the cashier advised plaintiff's husband that plaintiff would be obliged to institute proceedings to establish her claim. The tools were returned some time after the 6th or 7th of June, and the cashier's check was indorsed by Hostetler and by the defendant and apparently arrived in Helena on June 10, where it received the indorsement of the Montana Trust & Savings Bank as of that date.

The arrangement between plaintiff (pledge lender, sec. 8298, Rev. Codes 1921), Hostetler (pledgor), and the bank was one of bailment or pledge (6 C. J. 1084), and the bank became the pledge-holder (sec. 8299, Id.), the Cat Creek Company being the pledgee (*Goriez* v. *Rock Creek Ditch Co.*, 67 Mont. 566, 216 Pac. 778), with the duties and obligations upon the bank of a depositary (sec. 8304, Rev. Codes 1921).

The bank was not warranted in ignoring the demand made upon it by plaintiff and surrendering the cashier's check to Hostetler. A bailee who, after receiving property under the bailment, acquires notice of the claim of the true owner and yet delivers the property to another person, or permits him to take it out of his possession, whereby it is lost to the owner, is generally held liable for its value in trover. (3 R. C. L. 130, note 15.) And this is so when he returns it to the bailor after receiving notice of an adverse claim by the true owner. (6 C. J. 1150, note 57, and note in 43 A. L. R. 170; Schouler's Bailments & Carriers, 3d ed., sec. 60; Hale on Bailments & Carriers, sec. 2, p. 33.) Here the defendant bank had actual notice that plaintiff claimed to be the owner of the cashier's check. It knew that plaintiff was the drawer of the

original check. The extent of its constructive notice must be measured by section 8781, Revised Codes 1921, which provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself, in all cases in which, by prosecuting such inquiry, he might have learned such facts."

When the bank obtained notice from plaintiff that she was ■ the owner of the check and of the money represented by it, the bank had constructive notice of those facts which reasonable inquiry would have disclosed. (*Angus* v. *Mariner,* 85 Mont. 365, 278 Pac. 996.) Had it pursued reasonable inquiry, it would have discovered that the facts were as they are now shown to be, namely: that Hostetler never had any claim or interest in the check or the money represented by it, and that it in fact represented money belonging to plaintiff, and that the check was given to Hostetler without any consideration whatsoever. Instead of making any inquiry or holding the check for a reasonable time after plaintiff asserted her claim to enable plaintiff to establish her right thereto, defendant surrendered it to Hostetler immediately after the tools were returned. The record discloses that plaintiff commenced a proceeding and caused a writ of attachment or garnishment to be served upon defendant on June 17, but defendant made return thereto of "no funds." Had defendant retained the check a reasonable length of time after plaintiff's claim thereto was asserted, plaintiff, as appears from the facts developed here, could have established her right thereto.

It has been said that, "where a bank receives moneys or the property of a depositor, payment to that depositor or his order after notice of the claim of a third person thereto will not relieve from liability to such person." (2 Michie on Banks and Banking, sec. 131, p. 976; see also vol. X, Columbia Law Journal, No. 1, January, 1930, p. 86.) And in 7 C. J. 640, it is said: "If a deposit is claimed by a person other than the depositor who forbids the bank from paying it to any person other than himself, the bank may be held liable for a disregard of such notice in case the claim is substantiated." The same author

in the same section also observes: "However, the bank cannot be required to hold the money beyond a reasonable time in order for the claimant to assert his rights, and if he fails to assert them within such time he is estopped."

Whether we would agree with the above propositions of law ▮▮▮ as applied to a general deposit in a bank need not here be considered. The case of *Murphy* v. *Nett*, 51 Mont. 82, L. R. A. 1915E, 797, 149 Pac. 713, in considering a general deposit, bears upon this point. But there also the third party claiming the money deposited was not able to establish his right thereto at the time he made the demand. Here we are considering, not a general, but a special, deposit made for a definite purpose. The fund was held in trust for a specific purpose. It was not mingled with the assets of the bank as in the case of a general deposit. The obligation of the bank to Hostetler was not the same as its obligation to customers of the bank carrying general deposits. The obligation of a depositary, such as the bank was in this case, to allow a reasonable time for the true owner to establish his right to the thing deposited, as against the depositor, is expressly conferred by our statute. (Sec. 7646, Rev. Codes 1921.) Under the circumstances, defendant, when it was advised by plaintiff that she was the owner of the money represented by the check and warned not to pay it to anyone else, was under obligation to hold it until plaintiff had a reasonable time to establish her claim thereto.

The record does not disclose that Hostetler ever made any demand upon the bank for the money represented by the check. But, if he did, the right of the defendant was clear. It could have paid the money into court and instituted an action in interpleader and thus caused the conflicting claimants to litigate their respective claims to the check and the money represented by it, or it could have held the check until either plaintiff or Hostetler commenced action against it and then required the other to defend the action. (Sec. 9087, Rev. Codes, 1921; *Murphy* v. *Nett*, supra; *Security Trust & Savings Bank* v. *Carlsen*, 205 Cal. 309, 271 Pac. 100, 470, 60 A. L. R. 630, and cases cited in note; Story on Bailments, 8th

ed., sec. 111.) By paying the money to one of the conflicting claimants, the bank did so at its peril. This court will not relieve it of the double liability produced by its own course of action. When it paid the money to Hostetler, who was not entitled to it, the bank exerted wrongful dominion over the property of plaintiff, which amounts to a conversion. (*Hardie* v. *Peterson,* 86 Mont. 150, 282 Pac. 494; *Sensiba* v. *Occident Elevator Co.,* 80 Mont. 426, 260 Pac. 709.) The court erred in entering judgment for .the defendant.

The judgment is reversed and the cause remanded, with direction to enter judgment for plaintiff in accordance with the prayer of her complaint.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Matthews concur.