KOONTZ, RESPONDENT, v. SHARON ET AL., DEFENDANTS; FRASER, APPELLANT.

(No. 7,900.)

(Submitted May 25, 1939. Decided September 28, 1939.)

[94 Pac. (2d) 668.]

*Mr. T. H. Burke,* for Appellant, submitted a brief, and argued the cause orally.

*Messrs. Speer & Hoffman,* for Respondent, submitted a brief; *Mr. Harvey B. Hoffman* argued the cause orally.

182

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

The defendant Line Motor Company is a corporation and at the time of the transaction sued upon the appellant Fraser and his codefendant Sharon were apparently equal owners of its capital stock. Defendant Sharon was manager of the company and in that capacity conducted the transaction in question here. Koontz was a salesman for the company, and in December, 1935, bought an automobile, the trade-in value of another car reducing the purchase price to $209.36, of which part was allowed as an employee's discount and the balance was paid to the company by plaintiff at defendant Sharon's urgent request. At the time of the purchase Sharon had plaintiff sign a conditional sale contract in blank, which Sharon fraudulently filled in and sold to the C. I. T. Corporation on behalf of defendant company. Plaintiff paid $404.67 to the finance company for the release of this contract, and sued all three defendants to recover. Judgment went in plaintiff's favor against all the defendants, but only Fraser has appealed.

Sharon was liable by reason of his own fraud, and the defendant company was liable because the fraud was committed for its benefit in a transaction conducted by its manager within the apparent scope of his authority. (See *Grorud* v. *Lossl*, 48 Mont. 274, 136 Pac. 1069; *Peck* v. *Northern Pac. R. Co.,*

51. Mont. 295, 152 Pac. 421, L. R. A. 1916B, 835; *Kirk* v. *Montana Transfer Co.,* 56 Mont. 292, 184 Pac. 987; *Schauer* v. *Morgan,* 67 Mont. 455, 216 Pac. 347; *Sensiba* v. *Occident Elevator Co.,* 80 Mont. 426, 260 Pac. 709.) These two defendants did not appeal.

The asserted liability of appellant Fraser is based solely upon a written agreement introduced as Exhibit 9, which is on a sheet of Rainbow Hotel stationery and reads as follows:

Aug. 7, 1936.

"This agreement between Ed Sharon is as follows. Fraser to give $900.00 and a Hudson & Stude that came in at $225.00 for his half interest in the Line Motor Co. If Sharon can sell the Co. before Fraser does he has the privilege of buying Frasers interest on same basis. (Fraser to be entirely responsible from hereon for Line Motor Co.) Sharon not to be held responsible for (debts) obligations of the Line Motor Company due outside parties.

"R. B. FRASER

"E. R. SHARON."

In the exhibit as introduced, lines are drawn through the words shown in parenthesis. Plaintiff's attorney testified that when Sharon first showed him the agreement, the words "Fraser to be entirely responsible from hereon for Line Motor Co." had not been stricken out. However, the main contention is that by the words "Sharon not to be held responsible for obligations of Line Motor Company due outside parties," Fraser obligated himself to pay the company's obligations, and that the agreement therefore constitutes "a contract, made expressly for the benefit of a third person" (plaintiff Koontz) within the meaning of section 7472, Revised Codes, and can be enforced by him.

It should be noted that the agreement really constituted an indefinite reciprocal purchase option to either owner to sell the entire corporation, although it was primarily intended that Fraser was to exercise the option, and in fact he did exercise it by buying Sharon's interest. Since it was so exercised, the

184

question is not before us whether it constituted a valid option contract.

The pertinent allegations of the amended complaint are: "That the defendant, R. B. Fraser, * * * subsequently * * * bought a substantial or controlling interest in defendant, Line Motor Co., a corporation, and * * * purchased from the defendant, R. R. Sharon, all of his stock, right, title, claim and interest in and to the defendant corporation, * * * and *as a part of the agreement* between the said E. R. Sharon and R. B. Fraser, the defendant R. B. Fraser, *then and there* promised and agreed with the defendant, E. R. Sharon, that he would pay, and be responsible for, all the outstanding obligations of the Line Motor Co., a corporation, and it was specifically understood and agreed between the defendant, E. R. Sharon and R. B. Fraser, *at said time* that the defendant, R. B. Fraser, would save the plaintiff, Paul Koontz, harmless in reference to any and all claims for the said sum of $404.67, and that the defendant, R. B. Fraser, would pay or see that the payments on the Paul Koontz contract hereinbefore referred to would be fully and regularly attended to and paid."

Summarized, the above allegations are that "as a part of the agreement," "then and there," and "at said time" it was agreed:

(1) That Fraser "would pay, and would be responsible for, all the outstanding obligations of the Line Motor Co.;"

(2) That Fraser would save Koontz harmless in reference to any and all claims for the $404.67; and

(3) That Fraser "would pay or see that the payments * * * would be duly and regularly attended to and paid" on the Koontz contract held by the C. I. T. corporation.

There is no allegation that Fraser agreed to pay Sharon's personal obligations arising from his fraud, or to save Sharon harmless on account of them; but only that Fraser agreed to pay and be responsible for the company's obligations and to save Koontz harmless and see that the C. I. T. payments were made.

As stated above, the only contract introduced in substantiation of these allegations was the written agreement above

recited; and the provision thereof relied upon is as follows: "Sharon not to be held responsible for obligations of Line Motor Company due outside parties." In effect it is contended that this provision means: "Sharon not to be held responsible *to outside parties* for obligations of Line Motor Company," which would seem to be quite different. But in any event, that provision cannot be construed as an agreement on Fraser's part to save Koontz harmless or to see that the C. I. T. payments were made on Koontz' contract (allegations 2 and 3 above); the only question is whether it constitutes his agreement (allegation 1 above) to pay the company's obligation to Koontz arising from the fraud practiced upon him by its manager Sharon. Obviously it cannot impose upon Fraser any personal liability for corporate debts, except in so far as it might release Sharon from such personal liability for corporate debts.

If Fraser had purchased a business owned personally by Sharon and as a part of the transaction had agreed that Sharon was not to be held responsible to outsiders for the business debts, it might plausibly be argued that Fraser had agreed to pay them, since otherwise Sharon would have been obligated to do so. But here the obligations for which Sharon was "not to be held responsible" to persons unspecified, were not his personal obligations, but obligations of the corporation, for which he was not personally responsible at all in the absence of special circumstances not here present, such as a director's liability for corporate debts through failure to file an annual report. Since there was no showing that Sharon was liable for the corporation's obligation to Koontz (as distinguished from Sharon's personal liability to him for fraud), it cannot be contended that the agreement freed Sharon from any corporate obligation; and if it did not free him from an obligation, it imposed none upon Fraser. (As stated above, there is no contention that by the agreement Fraser assumed Sharon's personal liability to Koontz for fraud.) The meaning of the expression cannot, therefore, be twisted into the release of Sharon from a corporate liability to Koontz and a consequent assumption of such liability by

Fraser, upon the supposition that its words should be paraphrased as above stated.

The only plausible and proper interpretation is that the words meant exactly what they said: ''Sharon not to be held responsible for obligations of Line Motor Company due outside parties.'' Responsible to whom? Not to Koontz as an outside party, for there is no allegation that Sharon was responsible to Koontz for the corporate obligation. Under the circumstances, all it could possibly mean was that Sharon (the seller) should not be responsible to Fraser (the purchaser), by reason of any corporate obligations, disclosed or undisclosed; that Fraser was to acquire the company just as it stood, including assets and liabilities, without any recourse upon Sharon or any reduction of the purchase price by reason of the company's obligations to outside parties. That is the literal and natural construction of the expression; and even if the construction sought by plaintiff were to be followed, it would not avail him, since it was not shown that Sharon was liable to him for the Line Motor Company obligation. In other words, he cannot profit by construing the agreement as one for the benefit of third persons, since he has not brought himself within the class of persons to be benefited.

Nor is any different result obtained by including in the written agreement the stricken words ''Fraser to be entirely responsible from hereon for Line Motor Co.'' For the reasons stated above with reference to the next following provision, it could not be construed as an agreement by Fraser to do either of the three things claimed in the complaint. Certainly, ''Fraser to be responsible'' is of no more force in that respect than ''Sharon not be held responsible;'' for neither provision can be construed as Fraser's promise to take over Sharon's unalleged and unproven liability to Koontz for the obligation of Line Motor Company to him. Nor, if so construed, can it dispense with Koontz' burden of showing that Sharon had been liable to him for the corporate obligation.

There is considerable controversy relative to a conversation between Fraser and plaintiff's attorney concerning the agree-

ment and its interpretation. The testimony in question was admitted over appellant's objection and was as follows:

"Witness: I said to Mr. Fraser, 'Is it true that Sharon has sold out in the Line Motor Co.?' His reply to me was, 'Yes, I have taken it over.' 'Well,' I said, 'Mr. Sharon, there can't,' I said, 'Mr. Fraser, there can't be any doubt but what Sharon and the Line Motor Co. are liable, can there be?' 'Absolutely none,' his reply was. I says, 'Mr. Fraser, isn't it a fact that, when you were up in the hotel, down at the Rainbow Hotel at Great Falls, with Sharon, didn't you tell Mr. Sharon, as part of the contract by which you took over his stock in the Line Motor Co., you would save him, save Sharon, harmless and take over the Koontz claim?' He says, 'Well,' he says, 'if I did promise it, you can't prove it.'

"I says, 'It happens, Mr. Fraser, you have signed a written memoranda pertaining to that,' and he says, 'Yes, but you can't get it.' 'Well,' I says, 'I am not so sure about that, Mr. Fraser.' 'Well' he says, 'you might as well forget about your lawsuit because, if you get a judgment against Sharon and the Line Motor Co., I am going to put them through bankruptcy because I still have strings on Sharon—he is still working for me—and, as for me, you can't catch me, or get me in this thing,' and he laughed.

" 'Well,' I says, 'do you remember that was in that written instrument? He says, 'Yes, I think I do.' I says, 'You did promise Sharon at that time you would see him through on this Koontz claim, and see he wouldn't be held on it, didn't you? and he says, 'Yes, I did, but you can't prove it,' and I says, 'Do you deny you have any obligation in the matter?' He says, 'I am not denying anything, but,' he says, 'I am not going to pay any claim.' * * *

"Witness: In my conversation with Mr. Fraser in Lewistown, he admitted to me he had written the instrument on Hotel Rainbow stationery and had signed it, and this is the instrument about which Mr. Fraser and I were talking because I had with me this file and discussed with him a certain phrase used

in the instrument itself; and, I might say, also, that Mr. Burke admitted to me on the telephone, just a few days ago, that this was the instrument; that it was in Mr. Stromnes' hands, and asked me if I got it from Mr. Stromnes.''

Plaintiff depends particularly upon the third paragraph of this testimony. It is unnecessary to determine whether the evidence in question is objectionable as tending to vary by parol the terms of a written instrument, or whether it was proper as an admission against interest, or as an explanation of the circumstances under which the agreement was made. Assuming that the evidence was properly admitted, it cannot avail plaintiff as proof that the agreement was one made for his benefit. The only possible admission by Fraser consists of the following: ''I says, 'You did promise Sharon at that time you would see him through on this Koontz claim, and see he wouldn't be held on it, didn't you? and he says, 'Yes, I did, but you can't prove it,' * * * . '' That this evidence tends to vary the written agreement by oral interpretation rather than to prove an admission against interest is shown by the immediately preceding words: '' 'Well,' I says, 'do you remember what was in that written instrument? He says, 'Yes, I think I do.' ''

That the admitted promise to Sharon to ''see him through on this Koontz claim, and see he wouldn't be held on it,'' was, if anything, a separate oral agreement from that sued upon and was not in any event an agreement for the benefit of Koontz, was indicated by the next preceding paragraph: '' 'Well,' he says, 'you might as well forget about your lawsuit because, if you get a judgment against Sharon and the Line Motor Co., I am going to put them through bankruptcy * * * .' ''

There were three ways in which Fraser could ''see Sharon through and see he wouldn't be held'' on the Koontz claim. One would be by paying Koontz direct; the second would be by reimbursing Sharon for any payment he was forced to make to Koontz; and the third would be by putting Sharon through bankruptcy. The testimony indicates that it was the third which the parties had in mind; but if we exclude it entirely plaintiff

is in no better position. Of the other two methods stated only the first can possibly be considered as constituting an agreement for Koontz' benefit; and there is no evidence whatever of any agreement to pay Koontz direct. The utmost effect of either the written agreement or the oral testimony was that Fraser assumed an obligation to Sharon but none to Koontz.

There being no evidence of an agreement by appellant for the benefit of Koontz, the judgment against him cannot be sustained, and it is therefore reversed and the cause remanded with directions to enter judgment in favor of Fraser and against Koontz.

ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ERICKSON concur.