No. 87-349

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

LORRAINE C. FRIGON,

Plaintiff and Appellant,

-vs-

MORRISON-MAIERLE, INC.; WILLIAM
G. ENRIGHT and LARRY W. LARSEN,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Nye & Meyer; Joan Meyer Nye, Billings, Montana

For Respondent:

Crowley, Haughey, Hanson, Toole & Dietrich; Sharon
Novak, Billings, Montana

Submitted on Briefs:  May 26, 1988

Decided:  August 1, 1988

Filed: AUG 1 1988

*Ethel M. Harrison*

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Appellant Lorraine C. Frigon appeals from the judgment and order of the District Court of the Thirteenth Judicial District, Yellowstone County, granting summary judgment in favor of respondents Morrison-Maierle, Inc., William G. Enright and Larry W. Larsen. We affirm.

Appellant frames nine issues for consideration by this Court:

1. "Is a cause of action for breach of the employer's covenant of good faith and fair dealing limited to wrongful termination, where Employer breached its own handbook requirements as to performance and related salary reviews."

2. "Does the record present genuine issues of material facts as to whether Frigon has a cause of action for wrongful discharge on a constructive discharge theory."

3. "Does the record present genuine issues of material fact sufficient to present Frigon's cause of action for defamation."

4. "Does the record present genuine issues of material fact as to whether a privilege exists to prevent a claim for defamation in this case."

5. "Does the record present genuine issues of material fact sufficient to present a cause of action for negligent infliction of emotional distress on the part of any Defendant."

6. "Does the record present genuine issues of material fact sufficient to present a cause of action for intentional infliction of emotional distress on the part of any Defendant."

2

7. "Is Frigon's claim for negligent or intentional infliction of emotional distress barred by the exclusivity provisions of Montana Workers Compensation Law?"

8. "Did the Court err in ordering Defendants their costs on summary judgment, where Defendants recovered no damages and did not ask for costs in their Motion for Summary Judgment."

9. "Did the Court err in awarding Defendant as a cost on summary judgment the expense of Defendants taking Frigon's deposition."

Appellant was hired by respondent Morrison-Maierle as a part-time secretary/receptionist in January of 1984, and paid $5.50 per hour. Her immediate supervisors were respondents Enright and Larsen. The "Employee's Handbook" produced by Morrison-Maierle and given to appellant soon after she was hired stated a policy of conducting employee performance reviews and annual salary reviews. These reviews were to be conducted by the employee's immediate supervisor. When she was hired, appellant was informed that she would receive her first salary review in six months. In April of 1984, appellant became a full-time employee, and in July of 1984 she received a 29¢ per hour raise as part of a general annual office raise. Appellant was told by Enright that she was still due a merit raise, but he didn't have time to do a performance evaluation on her.

In October of 1984 at appellant's request, she was given a performance evaluation by respondent Larry Larsen, during which she was told that her work was satisfactory with the exception of some complaints about her filing things in the wrong place.

In November of 1984, Philip Green became branch manager of the office, and appellant's supervisor. Appellant requested an annual salary review in January of 1985, but the

record does not show that such a review was ever conducted. On July 15, 1985, appellant met with Green for a performance review. During this meeting, appellant was informed that while Green had recommended she receive a merit raise, the Helena office (headquarters of Morrison-Maierle) had denied the raise on the basis of prior negative comments about appellant's job performance made to company officials in Helena by Enright and Larsen.

Appellant testified in deposition that Green had characterized the negative comments as "tremendous trifles" or "tremendous trivials". Green indicated that he would personally re-evaluate appellant's performance in three months, and if warranted, recommend a merit raise. He expressed his desire to work with appellant to resolve the problems in her working relationship with Enright and Larsen. He also said, however, that if the choice were his, he would look for another job rather than continue working with Enright and Larsen, who he said, "literally don't like the way you squeeze the toothpaste." Appellant testified that her response was that she would not let the two men bother her, to which Green said, "Good for you."

Appellant requested that the negative comments be put into writing. The two men were at first reluctant to do so, but on July 25, 1985, she received a memorandum written by Enright and Larsen containing a list of ten criticisms. Appellant prepared a written response to these criticisms, which she gave to Green on Friday, July 26. On Monday, July 29, appellant tendered her resignation, and on December 11, 1985, initiated this lawsuit, alleging breach of implied covenant of good faith and fair dealing, constructive discharge, slander and negligent or intentional infliction of emotional distress. Respondents filed a motion for summary

4

judgment on February 25, 1987, which the District Court granted. This appeal followed.

The standard for review of the grant or denial of a summary judgment motion is the same as that used by the trial court. Dare v. Montana Petroleum Marketing Co. (Mont. 1984), 687 P.2d 1015, 41 St.Rep. 1735. In order for summary judgment to issue, the movant must show there is "no genuine issue as to all facts considered material in light of the substantive principles entitling the movant to a judgment as a matter of law." Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 511. "If the movant has met this burden, it then shifts to the non-moving party to demonstrate a genuine issue of material fact. Mere denial or speculation will not suffice, the non-moving party must show facts sufficient to raise a genuine issue." Gamble Robinson Co. v. Carousel Properties (Mont. 1984), 688 P.2d 283, 287, 41 St.Rep. 1757, 1761.

I.

Appellant contends the respondents breached their covenant of good faith and fair dealing with her by refusing to give her performance and salary reviews when required by the Employee's Handbook, and by denying her a merit raise on the basis of negative and at least partially false comments made by her former supervisors, to which she had little or no opportunity to respond. Appellant disputes the District Court's holding that a cause of action for breach of a covenant of good faith and fair dealing did not lie because appellant voluntarily resigned. According to appellant, our decisions in Dare and Gates v. Life of Montana Insurance Co. (1982) 196 Mont. 178, 638 P.2d 1063, establish breach of the covenant of good faith and fair dealing as a tort separate from wrongful discharge, thereby obviating the need for termination in order for this cause of action to lie.

5

Appellant further argues that our decision in Drinkwalter v. Shipton Supply Co. (Mont. 1987), 732 P.2d 1335, 44 St.Rep. 318, establishes that such a covenant can be breached "on-the-job" through sexual harassment.

All of the decisions of this Court involving a covenant of good faith and fair dealing have been limited to instances of express employee termination or constructive discharge. The appellant is correct in her assertion that breach of a covenant of good faith and fair dealing is a separate tort from wrongful discharge. The latter is premised on acts by the employer in violation of public policy, while the former is broader, and does not require a public policy violation. Dare, 687 P.2d at 1019-20. However, both Dare and Gates involved employee terminations. Breach of the covenant of good faith and fair dealing was established as a tort separate from wrongful discharge, but applicable only in cases of employee termination.

Our holding in Drinkwalter also fails to support appellant's argument. Our holding in that case simply stated the plaintiff could plead established common-law causes of action in addition to distinct and different statutory causes of action such as the plaintiff's sexual discrimination claim under the state Human Rights Act. Drinkwalter, 732 P.2d at 1338. The fact remains that the covenant of good faith and fair dealing is applicable only in cases of employee termination in this state.

The record contains the letter in which appellant voluntarily resigned from her job. There was thus no express termination. On these facts, there is no genuine issue of material fact as to appellant's claim for breach of the covenant of good faith and fair dealing. As we will discuss below, appellant has failed to set forth sufficient facts to establish constructive discharge. Appellant's argument

6

therefore amounts to "mere denial or speculation" which is insufficient under our test in Gamble to avoid summary judgment. The District Court's decision to grant summary judgment on appellant's claim of breach of the covenant of good faith and fair dealing was therefore correct, and we affirm the court on this issue.

## II.

Appellant next argues that she presented genuine issues of material fact as to her claim of constructive discharge. She argues that she was forced to resign because "the employer had deliberately accepted Enright and Larsen's criticisms over the recommendations of her supervisor, contrary to its own policies." Appellant points to comments by Green and former Morrison-Maierle secretary Phyllis Swindell that they would leave rather than continuing to work with Enright and Larsen as further evidence of appellant's reasonable belief that she was being forced to resign.

Appellant's brief states the test in Montana for constructive discharge as "whether sufficient words or actions by the employer 'would logically lead a prudent person to believe his tenure had been terminated.'" Hannifin v. Retail Clerks Int'l Ass'n (1973), 162 Mont. 170, 178, 511 P.2d 982, 987. She also notes, "A determination of constructive discharge depends on the totality of circumstances, and must be supported by more than an employee's suggestive [sic] judgment that working conditions are intolerable," and cites Snell v. Montana Dakota Utilities Co. (1982), 198 Mont. 56, 643 P.2d 841. There is room to dispute this characterization. Hannifin did not deal with constructive discharge, nor has that doctrine been recognized beyond discrimination cases such as Snell, where a high burden of proof was placed on the plaintiff.

7

Even assuming that appellant correctly states the test for constructive discharge in Montana, the facts do not support her argument. Appellant relies on the fact that she was denied a raise due to negative comments by Enright and Larsen. Looking at the "totality of the circumstances," this was far from a situation that would lead a "prudent person to believe [her] tenure had been terminated." She was denied a raise, but was never told that she was going to be fired. On the contrary, appellant testified in deposition that Green stated he wanted appellant to stay at her job, he would personally re-evaluate her in three months and if warranted recommend a raise, and he wanted all of the parties concerned to sit down and work out any differences (a suggestion initially made by Larsen). Green's statement that if he were in appellant's position, he would contemplate quitting does not rise to the level of intimating to appellant that she was being terminated. The appellant was instead laboring under her own subjective judgment that working conditions at Morrison-Maierle had become intolerable.

The appellant fails to raise a genuine issue of material fact as to her claim of constructive discharge. The District Court was correct in granting summary judgment, and we affirm the court's order on this issue.

III.

Appellant next presses her argument that she was defamed by respondents Enright and Larsen. According to appellant, the oral remarks of Enright and Larsen amounted to slander, and when those criticisms were reduced to writing, they were libelous.

The memorandum written by Enright and Larsen at appellant's request contained the following ten criticisms of her job performance:

1. Correspondence filing--copies not made or copies lost or copies placed in wrong file. Correspondence filed in wrong file, have had to send out to get copies from clients so we could have in our files.
2. Reading file not always complete--every piece of correspondence should be filed for reading.
3. Telephone questions pretaining [sic] to specific projects are to and should be referred to the project manager
4. Phone is a business phone--not to be abused.
5. Does not realize importance of position: prompt and accurate measures should be taken concerning typing, packaging or mailing items requested as soon as possible
6. Lacking confidence in what she does.
7. Can not or does not want to be creative--rely on others.
8. Does not understand or remember content of correspondence.
9. Repetitious tasks not undertaken without repeted [sic] help.
10. Loss of a $100,000 check because of mis-address, after very specific instructions.

The Montana legislature has defined defamation by statute as follows:

Libel Defined. Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy or which causes him to be shunned or avoided or which has a tendency to injure him in his occupation.
Section 27-1-802(3), MCA.

Slander defined. Slander is a false and unprivileged publication other than libel which:
...
(3) tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires or by imputing something with reference to his office, profession, trade, or

9

business that has a natural tendency to lessen its profit.
Section 27-1-803, MCA.

Appellant argues that the comments made by Enright and Larsen tended to injure her in her occupation, as they called into question her competence, and tended to injure her financially, as they prevented her from obtaining a raise.

The test applied by this Court in defamation cases is stringent. In Wainman v. Bowler (1978), 176 Mont. 91, 576 P.2d 268, we stated:

> Defamatory words to be actionable ... must be of such a nature that the court can <u>presume</u> <u>as</u> <u>a</u> <u>matter</u> <u>of</u> <u>law</u> that they will tend to disgrace and degrade [the plaintiff] or cause him to be shunned and avoided. It is not sufficient, standing alone, that the language is unpleasant and annoys or irks him, and subjects him to jests or banter, so as to affect his feelings.

<u>Waiman</u>, 576 P.2d at 271 (emphasis supplied). The comments made by Enright and Larsen were directed at areas of appellant's job performance they felt were in need of improvement. The fact that these comments were not initially relayed to appellant may not have been good business practice, but there is no evidence to support a holding that they disgraced or degraded appellant as a matter of law. According to appellant's own testimony, her supervisor characterized the comments as trivial and proposed a re-evaluation in a short time. If we were to accept appellant's argument, every time an employee was denied a raise on the basis of dissatisfaction with elements of their job performance, the employer could be subjected to a defamation suit.

Furthermore, a basic tenet of the law of defamation is that an expression of opinion is generally not actionable.

10

50 Am Jur 2d, Libel and Slander, § 14; see, e.g. Janklow v. Newsweek, Inc., 759 F.2d 644 (8th Cir. 1985). There is nothing in the comments to show a factual allegation that appellant was generally disqualified for her job. If that were the case, presumably Enright and Larsen would have taken steps to have appellant terminated. Instead, appellant's deposition testimony shows that Larsen wished to sit down with Enright, Green and appellant and work out the problem. The facts relied on by appellant to show defamation instead reflect opinions rendered in the context of the evaluation of her performance on the job.

Appellant's allegation that the District Court made an improper finding of fact in ruling that the comments quoted above were not defamation is incorrect. As we have held previously, facts are not found on summary judgment, as Rule 56, M.R.Civ.P., requires that there be no issue of material fact in order for summary judgment to issue. Major v. North Valley Hospital (July 15, 1988), No. 87-511, slip op. at 4; citing Boise Cascade Corp. v. First Security Bank of Anaconda (1979), 183 Mont. 378, 600 P.2d 173. The evidence in this case does not raise a genuine issue of material fact regarding any possible defamation of appellant. Upon reviewing that evidence, the District Court correctly concluded that summary judgment would be proper on this issue, and we affirm that decision. Having so held, it will not be necessary for us to proceed further and consider the issue of privilege framed by appellant.

IV.

Appellant next contends that she set forth facts sufficient to establish a cause of action for negligent or intentional infliction of emotional distress. As to negligent infliction of emotional distress, appellant asserts this Court recognized that negligence can be a proper basis

11

for recovery in a wrongful discharge case in Crenshaw v. Bozeman Deaconess Hospital (Mont. 1984), 693 P.2d 487, 41 St.Rep. 2251. Appellant contends that the record contains genuine issues of material fact on this issue, in that "Enright and Larsen had to be either negligent or intentionally malicious in making statements about Frigon" when the mistakes complained of were attributable to others, including Enright and Larsen themselves. She also states that Morrison-Maierle was negligent in failing to determine whether the criticisms were warranted.

Appellant and respondents note that this Court has recognized the tort of negligent infliction of emotional distress in only limited situations, and cite Versland v. Caron Transport (1983), 206 Mont. 313, 671 P.2d 583, as their example. In Versland, we enunciated a three-part test for this tort:

> 1. The shock must result from a direct emotional impact upon the plaintiff from the sensory and contemporaneous perception of [an] accident, as contrasted with learning of the accident from others after its occurrence.
> 2. The plaintiff and the victim must be closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.
> 3. Either death or serious physical injury of the victim must have occurred as a relult of the defendant's negligence.

Versland, 671 P.2d at 588. Appellant does not meet this test, nor is her argument based on the Crenshaw case convincing. In Crenshaw, we held that an action for negligence could lie in a case of wrongful discharge. As discussed above, appellant has not presented facts sufficient to establish a cause of action for wrongful discharge.

12

Appellant's claim of intentional infliction of emotional distress is premised on our decision in <u>Gates</u> and the Restatement (Second) of Torts. Appellant notes that in <u>Gates</u>, we addressed the plaintiff's claim for intentional infliction of emotional distress, although we did not uphold it. The opinion in <u>Gates</u> cited Kelly v. Lowney & Williams, Inc. (1942), 113 Mont. 385, 126 P.2d 486 (recognizing "recovery for damages for personal injuries occasioned by fright or mental shock though there be no physical contact").

Emotional distress under Montana law has been and remains primarily an element of damages rather than a distinct cause of action. See, e.g. Gurnsey v. Conklin Co., Inc., (Mont. 1988), 751 P.2d 151, 45 St.Rep. 1. Appellant, however, argues that our holding in <u>Gates</u> opened the door for such a cause of action, and urges that we apply the following elements to this case:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, such bodily harm.

Restatement (Second) of Torts § 46 (1965).

Appellant asserts that "Enright and Larsen intentionally and/or recklessly made false, negative statements about [appellant]". She argues that the only remaining question is thus whether the conduct of the two men was "extreme and outrageous". Appellant asserts that a material question of fact exists as to that conduct, citing her testimony that Green characterized the comments as trivial and yet expressed hesitance about giving appellant the written memorandum because of its harshness.

Appellant does not present a case that merits recognition by this Court of intentional infliction of

13

emotional distress as a cause of action. Comment "d" to Section 46 of the Restatement explains the nature of the conduct necessary to impose liability:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Restatement (Second) of Torts, § 46, Comment d (1965). In Johnson v. Supersave Markets, Inc. (Mont. 1984), 686 P.2d 209, 41 St.Rep. 1495, this Court enunciated a test for compensation of intentional infliction of emotional distress. In the context of an action for unlawful arrest or imprisonment, we held that such an element of damages would only be proper if the tortious conduct complained of resulted in "a substantial invasion of a legally protected interest and caused a significant impact upon the person of the plaintiff." Johnson, 686 P.2d at 213 (emphasis in original).

There is no evidence in the record of this case which would support a claim for intentional infliction of emotional distress. The comments made by Enright and Larsen, and the failure of Morrison-Maierle to give appellant a raise are hardly instances of conduct that goes "beyond all possible bounds of decency." Nor has appellant presented facts showing a substantial invasion of her legally protected interests. The law has yet to protect a person's interest in receiving a merit raise.

The District Court correctly granted summary judgment on this issue, and we affirm that decision. Having so held, it is not necessary for us to proceed to the issue involving Montana Workers' Compensation law framed by appellant.

14

## V.

Finally, appellant asserts that respondents were not entitled to costs in this case. She asserts that the District Court erred in awarding costs in that it did not follow Montana statutes on the subject:

> 25-10-101. When costs allowed, of course, to plaintiff. Costs are allowed, of course, to the plaintiff upon a judgment in his favor in the following cases:
>
> . . .
>
> (3) in an action for the recovery of money or damages, exclusive of interest, when the plaintiff recovers over $50;
>
> 25-10-102. When costs allowed, of course, to defendant. Costs must be allowed, of course, to the defendant upon a judgment in his favor in the actions mentioned in 25-10-101.

Sections 25-10-101 and 25-10-102, MCA. Appellant argues that under these statutes, respondents would be entitled to costs only if the judgment of the District Court awarded them a recovery of at least $50. No damages were awarded by the court, and appellant therefore asserts that no costs should have been allowed.

The prevailing party is generally entitled to costs. See, e.g. Carroccia v. Todd (1980), 189 Mont. 172, 615 P.2d 225. While the particular situation presented by this case is rarely before this Court, we are guided by our decision in Marcus v. Bowman (1940), 110 Mont. 412, 101 P.2d 68. In Marcus, we upheld an award of costs to a defendant whose counter-claim had been dismissed, but who prevailed on the merits of the plaintiff's claim. The defendant was awarded nothing by the court as a recovery, but we upheld the award of costs to defendant as the prevailing party.

15

Appellant asserts that in particular, the District Court erred in allowing the cost of taking her deposition as part of the costs awarded to respondents. She asserts that the deposition was taken solely for the convenience of respondents, and was therefore not includable in the costs awarded under our decision in Morrison-Maierle v. Selsco (1980), 186 Mont. 180, 606 P.2d 1085. However, our decision in Roy v. Neibauer (Mont. 1981), 623 P.2d 555, 38 St.Rep. 173 specifically held that depositions necessary for disposing of litigation by summary judgment were includable as costs. In this case, the briefs of both appellant and respondents before the District Court relied heavily on testimony taken from appellant's deposition in arguing for and against summary judgment. The memorandum of the District Court also referred to information from that testimony. Appellant's deposition was therefore necessary for disposal of this litigation by summary judgment, and was properly included by the District Court in the award of costs. We affirm the ruling of the District Court on this issue.

Our review of the record in this case shows that appellant failed to present facts sufficient to raise a genuine issue of material fact concerning any of her alleged causes of action. The District Court was therefore correct in granting respondents' motion for summary judgment.

We affirm the judgment of the District Court.

_____
Justice

We Concur:

_____

_____

16

John C. Sheehy

P. C. Gulbrandson

Justices

17