JUSTICE HARRISON
delivered the Opinion of the Court.
This is an appeal from summary judgment granted by the District Court of the Eleventh Judicial District, County of Flathead, the Honorable Michael H. Keedy presiding. Appellant John A. Lence (Lence) sued the respondents (collectively, Inter Lake) in June 1989 for damages arising from libel, false light invasion of privacy, intentional and negligent infliction of emotional distress, and negligence. Inter Lake answered Lence’s complaint in July 1989, and in July 1990 filed a motion for summary judgment. In January 1992 the court issued a memorandum and order granting the motion, and Lence appealed. We affirm.
Lence’s claims are based on three articles published in the Daily Inter Lake in November 1988 and April 1989, on two unrelated matters. Lence included all three articles in his complaint, and all three are considered here.

The 1988 Article

*437 On November 30,1988, the Daily Inter Lake published an article, under the heading “Lawyer-client dispute probed,” reporting that the Montana Supreme Court’s Commission on Practice was looking into “allegations of fraud and professional misconduct on the part of Kalispell attorney John A. Lence.” The article stated that local building contractor L. Craig Semenza (Semenza) had filed a complaint against Lence with the “high court,” alleging fraud, professional misconduct, and failure to pay $67,511 for Semenza’s work remodelling Lence’s office.
The article also stated that Semenza had been charged in September 1988 with criminal mischief after someone flooded Lence’s offices with a garden hose inserted through a hole drilled in the ceiling; that the county attorney was dropping this charge against Semenza because of insufficient evidence; that Lence had handled legal matters for Semenza’s contracting business; and that Semenza had fired Lence and wanted to bring a theft charge against him because he had refused to give Semenza access to his corporate records.
Lence’s attorney, Alan Lerner, wrote to the Daily Inter Lake demanding a retraction. Mr. Lerner’s letter identified the portions of the article that Lence considered defamatory and included statements describing the “true facts.” Inter Lake published these statements on December 11, 1988, under the heading “Attorney takes exception to DIL [Daily Inter Lake] story.”
Lence objected particularly to the second paragraph of the article, which stated that Semenza had filed his complaint with “the high court.” In reality, of course, Semenza had filed his complaint with the Commission on Practice (Commission). Under the Montana Supreme Court Rules for Lawyer Disciplinary Enforcement, only the Commission may file a formal complaint against a lawyer.
When the author of the 1988 article, respondent Jacqueline Adams (Adams), spoke with Semenza, the proceedings before the Commission were confidential, pursuant to Rule 13 of the Rules for Lawyer Disciplinary Enforcement, because no formal complaint had been filed. But because Semenza approached Adams with the information and gave her a copy of this complaint, he, not she, violated the rule of confidentiality. The 1988 article was defamatory, Lence argues, because:
The Daily Inter Lake’s use of the words “high court” falsely informed all other attorneys reading the story that there was credible evidence to support the conclusion that [Lence] had committed fraud and was guilty of professional misconduct.
*438 Lence complained that Adams had published the story without giving Lence an opportunity to comment and without investigating Semenza’s allegations. Adams acknowledged these omissions in her deposition and stated:
The story was based on the complaint filed with the Commission on Practice. And just as I would not contact people named in a civil suit about their part in it, I would not contact those named in a complaint to the Commission on Practice. It’s not my job to determine who’s calling who names and who’s right.
Lence also objected to the article’s failure to state that charges against Semenza, for flooding Lence’s office, were to be dropped without prejudice. According to Lence, this omission implied that the county attorney had found no evidence against Semenza. In reality, he says, the county attorney “was not convinced of Semenza’s innocence but needed time to obtain more evidence.”
Adams admitted in her deposition that she knew before the article was published that charges against Semenza had been dropped without prejudice, and she agreed that the article would have been slightly less favorable to Semenza had she included and explained the phrase “without prejudice.” She did not do that, she said, because “the deadline was at hand” when she learned of the dismissal, and because she expected to write another story later, “when the actual matter came into court.”
On April 3,1989 the Commission notified Semenza, with a copy to Lence, that it had reviewed his complaint against Lence and found no ethical violation or breach of the Rules of Professional Conduct. The 1989 Articles
On April 4, 1989 Inter Lake published a short article about a Kalispell Board of Appeals hearing on a building permit for “the Main Street offices of attorney John Lence.” The article stated that the city judge had issued a summons to Lence, “who is charged with violating city codes by constructing openings in walls where they were prohibited.” Lence had installed windows in the north side of the building, which was on the property line, after city officials had informed him that placing windows on the property line would violate the Uniform Building Code.
On April 9,1989, the newspaper reported that Lence had pleaded innocent to the misdemeanor charge of violating the city building code and that the Kalispell Board of Appeals had approved a no-construction easement from the adjoining property owner, which satisfied the building code’s open space requirement for buildings with windows.
*439 At Lence’s request, the newspaper printed an item in its “Corrections” column on April 20, 1989, stating that “GKL,” a Montana corporation, not Lence, had been charged with a building code violation and explaining that Lence was the president of GKL and his wife, Gwendolyn K. Lence, was the secretary.
Lence argues that the “sting” of these stories was “not that a violation had been alleged, but rather that [Lence], an attorney, had personally violated the law,” and that Inter Lake should have known that the court files on the building code violation showed that GKL, not Lence, was the defendant.
In his deposition, however, Lence stated that GKL Corporation was merely a holding company created for the purpose of holding title to the building and that his wife was the sole stockholder. Lence appeared before the city judge on behalf of the corporation, and in their correspondence on this matter, both Lence and the city officials referred to the building as Lence’s building.
The following issues are presented for review.
1. Whether, in light of Article II, section 7 of the Montana Constitution, the District Court erred in granting summary judgment.
2. Whether the First Amendment protects newspaper articles about a preliminary investigation of alleged attorney misconduct and an alleged violation of a city building code.
3. Whether the articles are privileged, under § 27-1-804(4), MCA, as fair and true reports, without malice, of official proceedings.
4. Whether the District Court erred in dismissing Lence’s claim for false light invasion of privacy.
5. Whether Lence’s emotional distress claim duplicates his defamation claim.
6. Whether Lence’s negligence claim is barred as a restatement of the fault element of his defamation claim.
I
Did the District Court err in granting summary judgment?
Lence contends that in granting summary judgment the District Court erred by deciding genuine issues of material fact; by failing to view the evidence in a light most favorable to the opposing party; and by failing to consider Article II, section 7 of the Montana Constitution, which provides, in part, that:
*440 In all suits and prosecutions for libel or slander the truth thereof may be given in evidence; and the jury, under the direction of the court, shall determine the law and the facts.
Lence’s “genuine issues of material fact” are discussed below in the context of the remaining issues. The procedural issue —jury determination of law and facts in a libel case — was disposed of by this Court in Griffin v. Opinion Publishing Co. (1943), 114 Mont. 502, 138 P.2d 580, which held that it is for the court and not the jury to pass on motions for nonsuit, directed verdict, new trial, and so on, and in Williams v. Pasma (1982), 202 Mont. 66, 72, 656 P.2d 212, 215, which cited Griffin to support the proposition that “there is no absolute prohibition against granting summary judgment in libel cases.” In libel cases as in other civil cases, summary judgment is appropriate when there are no material issues of fact and the evidence supports the judgment as a matter of law. Kurth v. Great Falls Tribune Co. (1991), 246 Mont. 407, 804 P.2d 393; Rule 56(c), M.R.Civ.P.
As we decide here that there are no material issues of fact and that Inter Lake is entitled to judgment as a matter of law, we conclude that the District Court did not err in granting summary judgment.
II
Does the First Amendment protect the Daily Inter Lake articles?
In holding that Inter Lake’s report of Semenza’s complaint to the Commission is protected by a qualified constitutional privilege, the District Court relied on Landmark Communications, Inc. v. Virginia (1978), 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1.
In Landmark, the defendant newspaper published an article identifying a judge who was under investigation by the Virginia Judicial Inquiry and Review Commission. Like Montana’s Rules for Lawyer Disciplinary Enforcement (Rules), the Virginia statute requires confidentiality of the investigation until a formal complaint is filed with the Virginia Supreme Court. Unlike Montana’s Rules, the Virginia statute makes violation of the confidentiality rule a misdemeanor. The Virginia Supreme Court found the newspaper criminally hable, but the United States Supreme Court reversed, holding that the First Amendment does not permit criminal punishment of third parties, including the news media, for publishing truthful information about confidential proceedings of the Judicial Inquiry and Review Commission.
*441 Lence contends that the District Court’s reliance on Landmark is misplaced because the Virginia statute imposed criminal penalties; the case involved a public official and a matter of “the most urgent governmental importance;” and the holding was expressly limited to the publication of truthful information. In contrast, Lence argues, the present case is a civil action brought by a private citizen and is, in Lence’s view, “a private dispute without social or political significance.”
By the time Landmark was decided, however, the Supreme Court had extended First Amendment protection to publications about private citizens. Gertz v. Robert Welch, Inc. (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789. Both Gertz and Landmark are descendants of the seminal First Amendment case, New York Times v. Sullivan (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, but Sullivan, like Landmark, involved alleged defamation of a public official. In Gertz, the plaintiff was an attorney described in a magazine published by the defendant as, among other things, a “Leninist” and “Communist-fronter.” No evidence supported these allegations. The Supreme Court held that states have a legitimate interest in compensating private individuals for the harm inflicted on them by defamatory falsehood; therefore, states may define an “appropriate standard of liability for a publisher of defamatory falsehoods,” so long as they do not impose liability without fault. Gertz, 418 U.S. at 347, 94 S.Ct. at 3011. See Madison v. Yunker (1978), 180 Mont. 54, 589 P.2d 126 (following Gertz in establishing the standard of liability for defamation of a private person).
In Landmark, the Supreme Court held unequivocally that the newspaper’s publication of accurate factual information about an inquiry pending before the Judicial Inquiry and Review Commission “served those interests in public scrutiny and discussion of governmental affairs which the First Amendment was adopted to protect.” Landmark, 435 U.S. at 434, 98 S.Ct. at 1148. In Landmark and again in two cases involving private plaintiffs, the Court balanced these First Amendment interests against the interests served by preserving confidentiality and found that the latter were not sufficient to justify the subsequent punishment of speech.
Smith v. Daily Mail Publishing Co. (1979), 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399, ruled unconstitutional a West Virginia statute making it a crime for a newspaper to publish truthful information concerning the identity of juvenile offenders. The Florida Star v. B.J.F. (1989), 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443, held that where a newspaper had obtained a rape victim’s name from a *442 police report distributed to the press, a Florida statute making publication of the victim’s name unlawful was unconstitutional. “[WJhere a newspaper publishes truthful information which it has lawfully obtained, punishment may lawfully be imposed, if at all, only when narrowly tailored to a state interest of the highest order.” The Florida Star, 491 U.S. at 541, 109 S.Ct. at 2613.
If the public’s interest in the dissemination of truth outweighs the state’s interest in protecting the privacy of rape victims or juvenile offenders, then surely the public’s interest in accurate information about attorney discipline outweighs the state’s interest in preserving the confidentiality of Commission on Practice investigations, where, as here, the press obtained the information lawfully. Thus, Lence cannot recover unless he can establish that the published information was false. “A private-figure plaintiff must bear the burden of showing that the speech at issue is false before recovering damages for defamation from a media defendant.” Philadelphia Newspapers, Inc. v. Hepps (1985), 475 U.S. 767, 777, 106 S.Ct. 1558, 1564, 89 L.Ed.2d 783, 793.
Lence contends that the published information in this case was neither truthful nor accurate and that the “irresponsible publication of false information is not privileged communication protected by the First Amendment.” By “false information,” he means the 1988 article’s reference to the “high court” instead of the Commission on Practice; its failure to state that charges against Semenza had been dropped without prejudice; the implication that Lence had been charged with theft; and in the 1989 articles, the attribution of the building code violation to Lence instead of the GKL corporation. The evidence is sufficient, Lence argues, for a jury to conclude that these errors were not inconsequential or insignificant but instead were “gross distortions of the truth.”
The District Court concluded, however, that the cited errors were inconsequential and that the articles were substantially true. The 1988 article did not allege that Lence had actually committed acts of fraud, professional misconduct and theft, but merely reported accurately that Semenza had filed a complaint alleging such acts, and that police records indicated that Semenza had told the police he wanted to bring a theft charge against Lence. Similarly, the 1989 articles were substantially true because the acts on which the misdemeanor building code violations were based were the personal acts of Lence, not his corporation, and because Lence himself consistently treated his personal interests as identical to those of the GKL corporation.
*443 We conclude that Lence failed to meet his threshold burden of establishing the falsity of the Daily Inter Lake articles. The articles, therefore, are protected by the First Amendment as truthful information about a matter of public significance.
Ill
Does the fair and true report privilege protect the Daily Inter Lake articles?
Libel is a false and unprivileged publication. Section 27-1-802, MCA (emphasis added). If the publication appears to be privileged, the plaintiff must show that it is false. Cooper v. Romney (1914), 49 Mont. 119, 128, 141 P. 289, 292. Section 27-1-804, MCA, provides that for purposes of a defamation action, a “privileged publication” is one made in the proper discharge of an official duty, in any legislative or judicial proceeding, or:
(4) by a fair and true report without malice of a judicial, legislative, or other public official proceeding or of anything said in the course thereof.
The District Court concluded that under this statute, the Daily Inter Lake articles were privileged and therefore not defamatory.
Whether a publication is privileged is a question of law for the court, where there is no dispute about the content of the proceedings on which the publication is based. Rasmussen v. Bennett (1987), 228 Mont. 106, 110, 741 P.2d 755, 758; Crane v. Arizona Republic (C.D. Cal. 1989), 729 F.Supp. 698, 702. Our review of this issue is confined to determining whether the District Court’s interpretation of the law is correct. Steer, Inc. v. Dep’t of Revenue (1990), 245 Mont. 470, 803 P.2d 601.
We hold that the District Court concluded correctly that a preliminary Commission on Practice investigation is part of a judicial proceeding, and that the 1988 Daily Inter Lake article therefore was privileged. See Cox v. Lee Enterprises, Inc. (1986), 222 Mont. 527, 529, 723 P.2d 238, 240 (“judicial proceeding” defined to include, for example, “any proceeding to obtain such remedy as the law allows”). The 1989 articles, which described Lence’s alleged violations of the Kalispell building code, clearly were privileged under § 27-1-804(4), MCA.
As Lence presented no evidence showing that the articles were false, and all three were privileged as a matter of law, Inter Lake was entitled to summary judgment.
*444 IV
Did the District Court err in declining to recognize Lence’s claim of false light invasion of privacy?
False light invasion of privacy is (1) the publicizing of a matter concerning another that (2) places the other before the public in a false light, when (3) the false light in which the other is placed would be highly offensive to a reasonable person, and (4) the actor knew of or acted in reckless disregard as to the falsity of the publicized matter. Restatement (Second) of Torts § 652E (1977).
Here, Lence has no legitimate claim for false light invasion of privacy because he failed to establish the falsity of the Daily Inter Lake articles. See Restatement (Second) of Torts § 652E, comment a (“it is essential to the rule stated in this Section that the matter published concerning the plaintiff is not true”).
V
Did the District Court err in holding that Lence’s emotional distress claims fail?
The District Court held that Lence could not recover for emotional distress because the Daily Inter Lake statements were substantially true and without malice. Citing Hustler Magazine v. Falwell (1988), 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41, the court concluded that emotional distress claims are subject to the same First Amendment defenses as the libel suit. Because the plaintiff in Falwell was a public figure, subject to an “actual malice” standard, while Lence is a private person, we affirm on this issue for different reasons.
This Court has adopted the requirements for recovering damages for infliction of emotional distress that are set out in Restatement (Second) of Torts § 46 Comment j (1965). First Bank v. Clark (1989), 236 Mont. 195, 771 R2d 84. The victim must show that the defendant’s tortious conduct resulted either in physical or mental injury or in “a substantial invasion of a legally protected interest,” and that it “caused a significant impact,” including emotional distress “so severe that no reasonable person could be expected to endure it.” Clark, 771 P.2d at 91.
Lence argues that “untrue charges of fraud, professional misconduct, theft and crime” are “sufficiently outrageous” to sustain a cause of action for severe emotional distress, but he offers no evidence of severe emotional distress. In his deposition he described a visit to a *445 hospital emergency room approximately two weeks after the 1988 article was published, for “stress and heart-related problems and circulatory problems” that he had not had previously. The only other evidence of distress or “significant impact” is Lence’s statement that he missed a meeting of a client’s board of directors on the day after the 1988 article appeared.
Even if Lence could legitimately plead emotional distress, the Daily Inter Lake articles would have had to be more than merely hurtful or offensive; they would have had to be “so outrageous ... as to go beyond all possible bounds of decency.” Frigon v. Morrison-Maierle, Inc. (1988), 233 Mont. 113, 123, 760 P.2d 57, 64. The newspaper’s truthful publication that Semenza had lodged a complaint with the Commission, and its report of the building code dispute, hardly constitute outrageous conduct that goes beyond all possible bounds of decency.
In the past we have characterized emotional distress as an element of damages rather than a distinct cause of action; see Frigon, 233 Mont. 113, 760 P.2d at 63; Shiplet v. First Security Bank (1988), 234 Mont. 166, 174, 762 P.2d 242, 247. Even if considered only for the purpose of establishing damages, however, Lence’s deposition testimony demonstrates the absence of any genuine issue of material fact concerning the severity of his alleged emotional distress.
VI
Was Lence’s negligence claim barred as a restatement of the fault element of his defamation claim?
Lence argues that the District Court erred in dismissing his negligence claim because “the facts of this case present a separate and distinct cause of action for negligence.” He claims that Inter Lake was under a duty to investigate Semenza’s allegations before repeating them to the public, that Inter Lake owed Lence a duty of care in their choice of words describing the status of Semenza’s complaint, and that Inter Lake owed Lence a duty of confidentiality under Rule 13C, Montana Supreme Court Rules for Lawyer Disciplinary Enforcement. By disseminating. Semenza’s allegations without investigation, Lence argues, Inter Lake breached not only its duties to Lence but also its direct duty to keep information about a Commission investigation confidential.
As a result of Inter Lake’s breach of duty, Lence claims, he has suffered damage to his reputation and business and “extreme emo *446 tional harm, humiliation, and physical stress which led to a doctor’s visit.” The First Amendment does not protect a media defendant from suits that can be brought generally under common law theories of liability, Lence argues, citing Cohen v. Cowles Co. (1991), _U.S._, 111 S.Ct. 2513, 2518, 115 L.Ed.2d 586, 597 (a newspaper publisher “has no special privilege to invade the rights and liberties of others”). Thus, Lence contends, he has a right to present his negligence theory of liability to a jury.
The District Court dismissed Lence’s negligence claim on the grounds that it “merely reiterates the fault element of the libel claim.” We hold that Lence’s negligence claim fails even if it is considered independently of his libel claim.
To prevail in a negligence action, a plaintiff must prove the following elements: a duty owing from the defendant to himself; a breach of that duty; proximate causation; and damages. Scott v. Robson (1979), 182 Mont. 528, 535-536, 597 P.2d 1150, 1154. Here, Inter Lake owed no duty to Lence to investigate or to keep the Commission investigation confidential. Semenza’s allegations, after all, had been made to a body authorized to investigate them. Adams’ role was merely to let the public know that an investigation had been initiated, not to undertake an investigation herself.
It is clear that Rule 13D, Montana Supreme Court Rules for Lawyer Disciplinary Enforcement, imposed a duty on Semenza, because it unequivocally requires “participants” in a disciplinary proceeding to “conduct themselves so as to maintain the confidentiality mandated by this rule.” Semenza violated this rule when he approached Adams with the information and gave her a copy of his complaint, but Adams committed no wrong in receiving the information. Further, the rule does not apply to an accurate republication of Semenza’s allegations. First, as we have seen, the 1988 Daily Inter Lake article is privileged under § 27-1-804(4), MCA. See also Dameron v. Washington Magazine, Inc. (D.C. Cir. 1985), 779 F.2d 736 (in a libel action brought by an air traffic controller against The Washingtonian, the court held that republication of a defamation uttered by another is immune when it is a fair and accurate report of official proceedings); Law Firm of Daniel P. Foster v. Turner Broadcasting System, Inc. (2nd Cir. 1988), 844 F.2d 955 (dismissing a libel action on the grounds that CNN’s broadcast of statements made by FBI officials was substantially accurate and therefore privileged under the state’s fair and true report statute).
*447 Second, our constitution gives a high priority to the public’s right to know. It can be abridged only when “the demand of individual privacy clearly exceeds the merits of public disclosure.” Art. 2, § 9, Mont. Const. See Great Falls Tribune Co., Inc. v. Cascade County Sheriff (1989), 238 Mont. 103, 775 P.2d 1267 (when law enforcement officers have engaged in conduct that subjects them to disciplinary action, the public’s right to know outweighs law enforcement officers’ privacy interests). Here, the merits of disclosing that an attorney has been accused of misconduct clearly outweigh the demand of individual privacy, when the misconduct is presented as a mere allegation by a person whose motivation and probable unreliability are adequately conveyed in the publication.
As Inter Lake owed no duty to Lence, it is entitled to judgment on Lence’s negligence claim as a matter of law.
Affirmed on all issues.
CHIEF JUSTICE TURNAGE, JUSTICES GRAY, McDONOUGH and WEBER concur.