No. 93-519

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994


STATE OF MONTANA, BOARD OF DENTISTRY,

       Plaintiff, Counter-Defendant
          and Respondent,

  -vs-

R. BRENT KANDARIAN,

       Defendant, Counter-Claimant
          and Appellant.

FILED

DEC 16 1994

CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:  District Court of the Eleventh Judicial District,
              In and for the County of Flathead,
              The Honorable Michael H. Keedy, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          James C. Bartlett; Hash, O'Brien & Bartlett,
          Kalispell, Montana


      For Respondent:

          I. James Heckathorn and Mikel L. Moore; Murphy,
          Robinson, Heckathorn & Phillips, Kalispell, Montana


                   Submitted on Briefs:  August 18, 1994

                           Decided:  December 16, 1994

Filed:

_____
               Clerk

Justice Karla M. Gray delivered the Opinion of the Court

R. Brent Kandarian (Kandarian) appeals from an order entered by the Eleventh Judicial District Court, Flathead County, granting the State of Montana, Board of Dentistry's motion for summary judgment on his counterclaims. We affirm.

Kandarian is a licensed denturist practicing in Kalispell. Kandarian ran an advertisement in a Kalispell paper stating that temporomandibular joint disfunction (TMJ) evaluations would be performed at Kandarian's place of business. On August 26, 1986, a Kalispell dentist wrote a letter to the Board of Dentistry informing it that, in the dentist's opinion, Kandarian was performing the unauthorized practice of dentistry. The dentist stated that evaluating TMJ was the practice of dentistry, and that he had personal knowledge of an offer by Kandarian to treat a patient with TMJ disorder via construction of a partial denture.

On September 22, 1986, the Board of Dentistry informed Kandarian of the complaint and requested a response. The Board of Dentistry also wrote to the Board of Denturitry, informing it of the complaint against Kandarian. On November 6, 1986, Kandarian replied to the Board of Dentistry. His letter stated that TMJ evaluations were within the scope of his practice of denturitry, and that the Board of Dentistry did not have the power to regulate his practice.

On November 12, 1986, the Board of Dentistry met and decided to request the Flathead County Attorney to file criminal charges against Kandarian for practicing dentistry without a license. At

an open meeting held on December 8, 1986, the Board of Denturitry discussed the complaint filed against Kandarian and decided to wait and see what action the Flathead County Attorney would take. On the same day, the Board of Dentistry's counsel released the contents of the complaint against Kandarian to a newspaper reporter. An Associated Press news story subsequently reported the correspondence between Kandarian and the Board of Dentistry's counsel regarding the allegation that Kandarian was practicing dentistry without a license. The story quoted the Board of Dentistry's counsel as saying that Kandarian's response to the Board of Dentistry "threw down the gauntlet," and that the Board of Dentistry had no choice but to pursue legal action.

On December 30, 1986, the Flathead County Attorney informed the Board of Dentistry's counsel that his office had decided not to prosecute Kandarian. On February 2, 1987, the Board of Dentistry filed a complaint with the District Court seeking to enjoin Kandarian from practicing dentistry without a license. Kandarian filed an answer and counterclaims against the Board of Dentistry on April 6, 1987.

James Stobie, D.D.S., whom the Board of Dentistry identified as its expert witness, stated in his deposition that as long as a denturist is practicing denturitry, it would be misfeasance or malfeasance not to do a TMJ evaluation while fitting for partial or full dentures. As a result of Stobie's deposition and the Board of Dentistry's failure to produce testimony that Kandarian had performed dental work on natural teeth, the court granted

3

Kandarian's motion for summary judgment on the Board of Dentistry's request for an injunction. In January of 1989, the District Court denied the Board of Dentistry's motion for summary judgment on Kandarian's counterclaims.

Kandarian filed an amended answer and counterclaims on March 13, 1989. His amended counterclaims included: violation of his right of privacy, wrongful injunction, intentional interference with business and patients, slander and libel, wrongful civil litigation, abuse of process, outrage and intentional infliction of emotional distress, and negligence. On February 8, 1990, the District Court vacated its earlier order and granted the Board of Dentistry summary judgment on Kandarian's counterclaims. The basis of the court's order was that the Board of Dentistry had quasi-judicial immunity from suit. Kandarian appealed the grant of summary judgment to the Board of Dentistry on his counterclaims, and the Board of Dentistry cross-appealed the grant of summary judgment to Kandarian on its request for an injunction.

In State Board of Dentistry v. Kandarian (1991), 248 Mont. 444, 813 P.2d 409 (Kandarian I), this Court affirmed the District Court's grant of summary judgment to Kandarian on the Board of Dentistry's request for an injunction and reversed its grant of summary judgment in favor of the Board of Dentistry on the basis of quasi-judicial immunity. On remand, the District Court again granted the Board of Dentistry summary judgment on Kandarian's counterclaims. Kandarian appealed.

On April 22, 1994, this Court issued an order remanding the

4

case to the District Court for the court to set forth its rationale for granting summary judgment to the Board of Dentistry on Kandarian's counterclaims. The order also stated that the parties would have the opportunity to further brief the issues after the District Court issued its explanatory memorandum. On June 27, 1994, the District Court issued its memorandum. Neither party filed a supplemental brief.

The sole issue on appeal is whether the District Court erred in granting the Board of Dentistry's motion for summary judgment and in dismissing Kandarian's counterclaims in their entirety.

## STANDARD OF REVIEW

Our standard in reviewing a district court's grant of a motion for summary judgment is the same as that utilized by the district court; we are guided by Rule 56, M.R.Civ.P. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. Thus, we determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. Minnie, 849 P.2d at 214.

## PRIVACY CLAIMS

Kandarian identifies three separate theories of recovery under his privacy counterclaim. His first theory is that the Board of Dentistry tortiously intruded on his physical and mental solitude. We previously have recognized the elements of an invasion of privacy action. "An invasion of privacy cause of action is defined as a 'wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or

5

humiliation to a person of ordinary sensibilities.'" Rucinsky v. Hentchel (Mont. 1994), 881 P.2d 616, 618, 51 St.Rep. 887, 888; citing Sistok v. Northwestern Telephone Systems, Inc. (1980), 189 Mont. 82, 92, 615 P.2d 176, 182.

Kandarian claims that the Board of Dentistry's efforts to obtain a list of Kandarian's patients through discovery was an attempt to invade his privacy. We reject Kandarian's argument by noting that the Board of Dentistry never obtained a list of Kandarian's patients. Even assuming arguendo that Kandarian could establish an attempt to invade his privacy, an attempted invasion of privacy is not the equivalent of an actual invasion of privacy. Thus, Kandarian's claim for invasion of privacy under this theory must fail.

Next, Kandarian raises a false light invasion of privacy claim and a claim that the Board of Dentistry invaded his privacy by releasing private facts to the public. We have recognized the elements of false light invasion of privacy as:

> (1) the publicizing of a matter concerning another that (2) places the other before the public in a false light, when (3) the false light in which the other is placed would be highly offensive to a reasonable person, and (4) the actor knew of or acted in reckless disregard as to the falsity of the publicized matter.

Lence v. Hagadone Investment Co. (1993), 258 Mont. 433, 444, 853 P.2d 1230, 1237; citing Restatement (Second) of Torts § 652E (1977).

The Restatement (Second) of Torts, § 652D, discusses public disclosure of private facts as follows:

> One who gives publicity to a matter concerning the

6

private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
(a) would be highly offensive to a reasonable person, and
(b) is not of legitimate concern to the public.

Kandarian asserts that release of the contents of the complaint against him to the press constituted a public disclosure of private facts which also placed him in a false light. We conclude, however, that Kandarian waived his privacy rights in relation to the complaint.

The Board of Dentistry's counsel released the complaint against Kandarian to the press on December 8, 1986. The minutes of the Board of Denturitry meeting that same day indicate that the Board of Denturitry discussed the complaint against Kandarian. The minutes also reflect Kandarian's statement that he wanted discussion of the matter to be open. In addition, Kandarian testified in his deposition as follows:

Q: And that was an open meeting [the meeting of December 8, 1986] of the Board of Denturitry?

A: Yes, it was.

Q: And in fact, you wanted it open; isn't that true?

A: Absolutely. I think that reflects that in the minutes. I had nothing to hide and I still don't.

Because the Board of Denturitry meeting was open to the public and Kandarian affirmatively desired that the complaint against him be discussed openly at the meeting, Kandarian waived his privacy claims of false light and releasing private facts to the public. We hold that the District Court properly granted the Board of Dentistry summary judgment on Kandarian's privacy counterclaims.

7

## WRONGFUL LITIGATION CLAIMS

Kandarian's counterclaims included wrongful injunction, wrongful civil litigation and abuse of process as separate claims. First, Kandarian advances a claim for wrongful injunction despite the fact that no injunction was issued in this case. Kandarian cites no authority holding that an action for wrongful injunction may be maintained absent the issuance of an injunction.

Kandarian relies on Interstate National Bank v. McCormick (1923), 67 Mont. 80, 214 P. 949, as support for his argument. However, that case involved the issuance of a wrongful injunction in favor of McCormick against a third party which affected Interstate National Bank's property. McCormick is distinguishable from the case before us in that the court had issued an injunction which affected the plaintiff's property and the plaintiff succeeded under a theory of conversion, not wrongful injunction. McCormick, 214 P. at 951.

Here, the Board of Dentistry never obtained an injunction. Thus, Kandarian could not demonstrate that the issuance of an injunction damaged him. We hold that the District Court properly granted the Board of Dentistry summary judgment on Kandarian's wrongful injunction counterclaim.

With regard to Kandarian's abuse of process claim, such a claim can succeed only where a claimant can establish an attempt to use process to coerce him or her to do some collateral thing which the claimant could not be legally or regularly compelled to do. Brault v. Smith (1984), 209 Mont. 21, 29, 679 P.2d 236, 240.

8

Kandarian argues that the Board of Dentistry's collateral purpose in filing a lawsuit was to identify a list of Kandarian's patients to build a stronger case against him.

The effort to obtain the names of Kandarian's patients was part of the Board of Dentistry's discovery in this case. "Pressing valid legal claims to their conclusion, even with an ulterior motive, does not by itself constitute an abuse of process." Brault, 679 P.2d at 240. The Board of Dentistry's attempt to strengthen its case through discovery does not amount to an abuse of process. We hold that the District Court properly granted the Board of Dentistry summary judgment on Kandarian's abuse of process counterclaim.

Kandarian also included a claim for wrongful litigation. However, Montana has never adopted the tort of wrongful civil litigation. Kandarian urges this Court to recognize the tort, but offers no compelling argument in favor of our doing so. Under the facts of this case, we decline to adopt the tort of wrongful civil litigation and hold that the District Court properly granted the Board of Dentistry summary judgment on Kandarian's wrongful litigation counterclaim.

### INTENTIONAL INTERFERENCE CLAIM

Kandarian claims that the Board of Dentistry intentionally interfered with his business and patients by releasing the contents of the complaint against him to the press and instituting an action seeking to enjoin him from performing TMJ evaluations.

We have stated that:

9

[i]n order to establish a prima facie case of tortious interference with business relations, the pleader must show that the acts (1) were intentional and willful; (2) were calculated to cause damage to the pleader in his or her business; (3) were done with the unlawful purpose of causing damage or loss, <u>without right or justifiable cause on the part of the actor</u>; and (4) that actual damages and loss resulted.

Richland National Bank & Trust v. Swenson (1991), 249 Mont. 410, 419, 816 P.2d 1045, 1051; citing Bolz v. Meyers (1982), 200 Mont. 286, 295, 651 P.2d 606, 611.  In order to establish a cause of action, the Board of Dentistry must have intentionally committed a wrongful act without justification or excuse. <u>Swenson</u>, 816 P.2d at 1051; citing Lythgoe v. First Security Bank of Helena (1986), 222 Mont. 163, 165, 720 P.2d 1184, 1185.

Here, the Board of Dentistry's counsel released the contents of the complaint to the press at the same time the Board of Denturitry discussed the complaint in a meeting open to the public. The information was open to the public at that time; therefore, releasing it to the press was not wrongful.

Kandarian also alleges that, by filing for an injunction, the Board of Dentistry attempted to interfere with his business.  The law in effect at the time the Board of Dentistry attempted to obtain an injunction against Kandarian stated:

Notwithstanding any other provision of law, a board may maintain an action to enjoin a person from engaging in the practice of the occupation or profession regulated by the board until a license to practice is procured.  A person who has been enjoined and who violates the injunction is punishable for contempt of court.

Section 37-1-136(3), MCA (1985).  The Board of Dentistry received a complaint from a dentist who claimed that Kandarian was

performing TMJ evaluations and that TMJ evaluations constituted the practice of dentistry. The Board of Dentistry's action in seeking an injunction against Kandarian was authorized by statute and was not tortious. We hold that the District Court properly granted the Board of Dentistry summary judgment on Kandarian's intentional interference counterclaim.

## SLANDER AND LIBEL

Kandarian claims that the release of the complaint against him to the press and statements made to the press constitute slander and libel. Slander and libel both require falsity. Sections 27-1-802 and -803, MCA. The article which Kandarian claims contains defamatory information provided by counsel for the Board of Dentistry essentially reports the fact that the Board of Dentistry intended to pursue legal action against Kandarian and recounts correspondence between Kandarian and the Board of Dentistry's counsel. This account of events is substantially true.

Kandarian asserts that counsel's statements that Kandarian "threw down the gauntlet" by his responses to the Board of Dentistry's correspondence constitute slander and libel. However, we previously have noted that "a basic tenet of the law of defamation is that an expression of opinion is generally not actionable." Frigon v. Morrison-Maierle, Inc. (1988), 233 Mont. 113, 121, 760 P.2d 57, 62. Comments by counsel for the Board of Dentistry amounted to statements of opinion which were not actionable. We hold that the District Court properly granted the Board of Dentistry summary judgment on Kandarian's libel and

11

slander counterclaim.

OUTRAGE AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Kandarian contends that the District Court erred in granting summary judgment on his claims of outrage and intentional infliction of emotional distress. Montana has not recognized a tort of outrage, and Kandarian offers no significant argument in favor of its adoption. We have stated that for a claim of emotional distress to succeed,

> [t]he victim must show that the defendant's tortious conduct resulted either in physical or mental injury or in "a substantial invasion of a legally protected interest," and that it "caused a significant impact," including emotional distress "so severe that no reasonable person could be expected to endure it."

Lence, 853 P.2d at 1237; citing First Bank v. Clark (1989), 236 Mont. 195, 205-06, 771 P.2d 84, 91.

In Lence, we affirmed the district court's grant of summary judgment in favor of the defendant on the plaintiff's claim of emotional distress. We noted that the plaintiff offered no evidence of severe emotional distress. Lence, 853 P.2d at 1237. In the present case, Kandarian argues that an alleged invasion of privacy by a government agency naturally produces severe emotional distress, but he produces no evidence that he actually suffered severe emotional distress. We hold that the District Court properly granted the Board of Dentistry summary judgment on Kandarian's counterclaims of outrage and intentional infliction of emotional distress.

NEGLIGENCE

Finally, Kandarian claims that the Board of Dentistry

12

negligently released the contents of its complaint against Kandarian and negligently filed suit against Kandarian. We held above that Kandarian waived his right to privacy regarding release of the complaint. Thus, release of the complaint cannot provide a basis for a proper negligence claim here.

Kandarian also claims that the Board of Dentistry negligently filed suit against him. We disagree. As we previously noted, the law in effect at the time the Board of Dentistry attempted to get an injunction against Kandarian authorized the Board of Dentistry to obtain injunctions against those practicing dentistry without a license. Section 37-1-136(3), MCA (1985). The Board of Dentistry believed that Kandarian was practicing dentistry without a license. The Board of Dentistry's action in seeking an injunction against Kandarian was not tortious. We hold that the District Court properly granted the Board of Dentistry summary judgment on Kandarian's negligence counterclaim.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

13

Justice Terry N. Trieweiler dissenting.

I dissent from that part of the majority opinion which rejects the tort of wrongful civil litigation, as applied to the facts in this case. In an age when a few frivolous lawsuits threaten to undermine the civil justice system and preclude claims which do have merit, it is especially important to deter and sanction lawsuits like the one filed by the Board of Dentistry. The elements of wrongful civil litigation, as set forth in Restatement (Second) of Torts § 674 (1977) are as follows:

> One who takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if
>
> (a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and
>
> (b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

We have, as far back as 70 years ago, recognized a tort known as "malicious prosecution" in Montana (*Stephens v. Conley* (1914), 48 Mont. 352, 138 P. 189), based on the important public policy that everyone has a right to be free from unjustifiable litigation. The right to be free from unjustifiable civil litigation, as described in § 674, is simply a more specific approach from a broad range of rights to be free from unjustifiable litigation and the attendant invasion of a person's privacy and exhaustion of an individual's financial resources.

14

I disagree with the majority's conclusion that "Kandarian urges this Court to recognize the tort, but offers no compelling argument in favor of our doing so." The very facts set forth in this Court's previous decision, *State Board of Dentistry v. Kandarian* (1991), 248 Mont. 444, 813 P.2d 409 *(Kandarian I)*, establish a compelling argument in favor of doing so. In that case we noted:

> [O]n February 2, 1987, the Board filed for an injunction against Kandarian.
>
> The Board identified James Stobie, D.D.S., as the expert witness who would testify as to whether TMJ evaluations were within the practice of denturitry. His deposition stated that as long as a denturist is practicing denturitry, it would be misfeasance or malfeasance <u>not</u> to do a TMJ evaluation while fitting for "partials" or "fulls."
>
> Kandarian counterclaimed and moved for summary judgment. The Board asked for "follow up discovery" and represented that it had witnesses who would be contacted and who would produce, by way of affidavit, evidence that Kandarian had done nondenture work on them.
>
> On January 8, 1988, the court dismissed the complaint against Kandarian because the Board had failed to produce affidavits showing that Kandarian had performed work on the natural teeth of two individuals previously named by the Board.

*Kandarian I*, 813 P.2d at 411 (emphasis added).

As I noted in my concurring and dissenting opinion to our prior decision:

> [T]he Board of Dentistry made no reasonable inquiry prior to filing its claim for injunctive relief in naming Kandarian as a defendant. A member of the Association had sent it a copy of an ad, indicating that Brent Kandarian, a denturist, was available for "TMJ evaluations."

15

However, none of Kandarian's patients were interviewed; no investigation was done; and no experts were consulted prior to the filing of suit.

After suit was filed, the Board finally retained James L. Stobie, D.D.S. He was identified in court documents as the Board's expert for the purpose of establishing that it was a violation of the Dental Practice Act for a denturist to perform TMJ evaluations. When he was deposed, however, his testimony was to the contrary.

. . . .

Subsequent to Dr. Stobie's testimony, the defendant moved for summary judgment. At the time of that hearing, the Board's attorney offered to provide the testimony of two witnesses who would say that Kandarian had worked on their teeth, even though it was not for the purpose of fitting dentures. The Board was given ten days to provide such information, but failed to do so. In fact, one of the witnesses was subsequently offered as a witness by Kandarian and testified contrary to the representations of the Board's attorney.

*Kandarian I*, 813 P.2d at 413.

Kandarian presented evidence that, at the time the Board of Dentistry frivolously sought its injunction, its purpose was to discredit him as chairman of the Board of Denturitry before the Montana Legislature. Therefore, I conclude that the facts in this case alone are sufficient to provide a compelling reason for adopting and applying, in this case, a cause of action for wrongful civil litigation.

However, I am also confused by the inference in the majority opinion that the tort of wrongful civil litigation is somehow radically different than the common law which already exists pursuant to the present tort of malicious prosecution. It is not. It is simply a more specific variation of the same tort.

16

For these reasons, I dissent from the majority opinion. I would adopt the tort of wrongful civil litigation in Montana. I conclude that the plaintiff has proven sufficient facts in this case to support a cause of action based on that tort. Therefore, I would reverse the District Court's order awarding summary judgment to the defendant.

_____
Justice

17

December 16, 1994

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


James C. Bartlett, Esq.
Hash, O'Brien & Bartlett
P.O. Box 1178
Kalispell, MT  59903-1178


I. James Heckathorn, Esq. & Mikel L. Moore, Esq.
Murphy, Robinson, Heckathorn & Phillips, P.C.
P.O. Box 759
Kalispell, MT  59903-0759

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy